# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### January 5, 2010 Session Heard at Knoxville

## MICHAEL SNEED v. BOARD OF PROFESSIONAL RESPONSIBILITY OF THE SUPREME COURT OF TENNESSEE

**Direct Appeal from the Circuit Court for Davidson County**
**No. 08C-1698    Donald P. Harris, Senior Judge**

---

**No. M2009-00720-SC-R3-CV - Filed January 26, 2010**

---

In this direct appeal of a lawyer disciplinary proceeding involving eight separate complaints, we must determine whether the trial court correctly affirmed the hearing panel's finding that attorney Michael Sneed violated numerous ethical rules and should be disbarred from the practice of law. Sneed contends that his disciplinary proceedings were procedurally unlawful because the hearing panel did not (1) conduct a prehearing conference as required by Tennessee Supreme Court Rule 9, section 13.6, (2) authorize the filing of two supplemental petitions for discipline, or (3) allow him to call as witnesses disciplinary counsel or the Board of Professional Responsibility's executive secretary. He also asserts that the evidence does not support the hearing panel's findings of professional misconduct and that he was denied a meaningful review in the trial court because the trial court failed to properly schedule and review his appeal from the hearing panel. Finally, Sneed challenges the finding of the hearing panel and the trial court that he should be disbarred from the practice of law. After careful review, we affirm the judgment of the trial court disbarring Mr. Sneed.

**Tenn. Sup. Ct. R. 9, § 1.3; Judgment of the Trial Court Affirmed**

CORNELIA A. CLARK, J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., and GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Michael Sneed, Nashville, Tennessee, pro se.

Sandy Garrett, Nashville, Tennessee, for the appellee, Board of Professional Responsibility.

**OPINION**

Factual and Procedural History

Michael Sneed, a lawyer practicing in Davidson County, Tennessee, was admitted to practice law in 1985. Prior to the events at issue in this case, Sneed accumulated an extensive disciplinary record as follows:

- Admonition in July 1992 for failure to file a complaint within the applicable statute of limitations and failure to communicate with a client.

- Admonition in August 1992 for failure to serve process resulting in the dismissal of a client's case and for lack of investigation prior to filing suit.

- Public censure in May 1993 for neglecting the cases of two clients and for failing to communicate with clients.

- Public censure in August 1994 for failure to file a complaint within the applicable statute of limitations.

- Private reprimand in October 1995 for dismissing a case without the client's consent and for failure to communicate with the client.

- Public censure in November 2000 for failure to timely file a complaint and for failure to communicate with the client.

- Suspension of six months in 2001 for ineffectively representing a client in a criminal matter, failing to comply with court orders and local rules of practice which resulted in the dismissal of a civil case, and for failing to file a timely appeal.

- Public censure in November 2002 for conduct prejudicial to the administration of justice, conduct that adversely reflects on the fitness to practice law, neglect and failure to prepare, and intentional or habitual violation of court rules.

In addition to these prior disciplinary actions, Sneed, in February 2009, was suspended from the practice of law for eighteen months and received a public censure arising out of five separate matters related to his failure to keep adequate trust account records, neglecting cases, and failing to communicate with clients. Additionally, by order entered contemporaneously with this opinion, Sneed has been found guilty by this Court of fifty

2

counts of criminal contempt for, among other things, continuing to practice law after being suspended by this Court in February 2009, holding himself out to the public and to the courts as a licensed attorney, and making misrepresentations to courts concerning the status of his law license. He was sentenced to serve fifty days in jail and fined $2,500 pursuant to Tennessee Code Annotated section 29-9-103 (2000) (one who willfully disobeys a court order and is found to be in criminal contempt may be sentenced to up to ten days of incarceration and ordered to pay a fine of $50 for each act of contempt).

The present case against Sneed arises out of three petitions for discipline filed by the Board of Professional Responsibility ("Board") based on eight complaints of misconduct. The initial petition was filed on September 20, 2005, and was based upon the complaints of two of Sneed's clients, Vickie Berry and Enrique Lopez. A supplemental petition for discipline was filed on January 13, 2006, arising out of complaints made by the Board itself, Dr. Dwaine Allison, attorney Elliott Ozment, Margarita Kennen-Sanchez, and attorney Sean Lewis on behalf of Anna Silva. A second supplemental petition for discipline was filed on September 19, 2006, based upon a complaint made by Sean Lewis on behalf of Roldolpho Gonzalez, another of Sneed's clients.

The three petitions for discipline were consolidated for trial before a hearing panel ("Panel") appointed pursuant to Tennessee Supreme Court Rule 9, section 8.2. On August 13 and 27, 2007, the Panel heard testimony from eight witnesses and received 43 exhibits into evidence. In a judgment filed on January 25, 2008, the Panel concluded that Sneed violated numerous ethical rules and should be disbarred. The record as to each complaint of misconduct may be summarized as follows:

*Vickie Berry Matter*

Sneed represented Vickie Berry in a slip and fall case. On September 2, 2003, Sneed filed suit on Berry's behalf. The case was continued several times at Sneed's request and, at one point, was dismissed for failure to prosecute. Although the dismissal for failure to prosecute was eventually set aside, the case was later dismissed on a motion for summary judgment. See Berry v. Houchens Mkt. of Tenn., Inc., 253 S.W.3d 141, 143, 148 (Tenn. Ct. App. 2007).

While Berry's case was being litigated, she complained to the Board that Sneed failed to respond to her inquires about the case and failed to keep her informed about the status of the case. Berry testified before the Panel that Sneed kept her "pretty much in the dark" about her case for several years. She left numerous messages on his cell phone and office phone to no avail. She even sent him a certified letter complaining about his failure to keep her informed about the case. Sneed did not refute Berry's testimony except to point out that she

3

acknowledged that he had communicated with her during the last two years of their professional relationship – which was after she had complained to the Board. The Panel found that Sneed failed to keep Berry informed about the status of her case, failed to comply with reasonable requests for information made by her, and failed to pursue her case with reasonable diligence and promptness, all in violation of Rules of Professional Conduct[1] ("RPC") 1.3,[2] 1.4,[3] and 8.4.[4]

*Enrique Lopez Matter*

Enrique Lopez hired Sneed to pursue a claim against the United States arising out of the federal government's seizure of $19,790 from Lopez at the Nashville International Airport in 2002. Lopez's claim was denied because it was untimely filed. He complained to the Board that Sneed failed to keep him informed about the case, failed to appear for scheduled meetings, and failed to pursue his claim with diligence and promptness. Further, Sneed represented two other individuals (Fernando Funtes and Migel Herrera) in the same matter without explaining to Lopez the potential conflict of interest. Before the Panel, Sneed admitted that he had represented all three claimants to the seized money and that he did not disclose his potential conflict of interest to any of them.

The Panel concluded that Sneed failed to pursue Lopez's claim for the seized money with diligence and promptness in violation of RPC 1.3. The Panel also found that because Sneed represented Lopez simultaneously with other individuals having claims to the seized money, he should have explained to his clients the potential conflict of interest as required by RPC 1.7.[5] The Panel also determined that Sneed was guilty of professional misconduct under RPC 8.4.

---

[1] The Rules of Professional Conduct are set out at Tennessee Supreme Court Rule 8.

[2] RPC 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[3] RPC 1.4(a) requires a lawyer to "keep a client reasonably informed about the status of a matter and comply with reasonable requests for information within a reasonable time."

[4] RPC 8.4(a) defines professional misconduct, in part, as violating a Rule of Professional Conduct.

[5] RPC 1.7(b)(2) prohibits a lawyer from representing a client if the lawyer has a conflict of interest unless the client consents, in writing, following the lawyer's "explanation of the implications of the common representation and the advantages and risks involved." The Panel did not specifically find that a conflict existed, but determined that the potential for a conflict required disclosure.

4

*Trust Account Matter*

On November 26, 2003, Bank of America reported to the Board that Sneed had overdrafted his trust account. In a series of letters, the Board requested that Sneed explain the overdrafts. Sneed responded that the overdrafts occurred because checks were written out of the wrong account. The Board requested more detailed information from Sneed, including a copy of his trust account bank statements, but Sneed failed to respond. The Board then subpoenaed Sneed's bank records and discovered 13 checks made payable to cash and 24 debits, none of which reflected client names or case numbers. In letters written to Sneed in August and September 2005, the Board requested an explanation. Sneed again did not respond. Not until the Board sent Sneed notice threatening a summary suspension of his law license did Sneed respond that he was attempting to retrace the transactions in question and would have the requested information soon. He did not, however, provide any further explanation or produce any records.

Sneed admitted that checks written on his trust account were returned for insufficient funds, and the Panel found that he failed to properly maintain his trust account in violation of RPC 1.15[6] and failed to respond to the Board's requests for information in violation of RPC 8.1(b).[7]

*Dr. Dwaine Allison Matter*

In 2004, Sneed represented two clients, Jose Marmol and Jesus Mendez, in a personal injury case. Sneed referred Marmol and Mendez to Dr. Dwaine Allison for medical treatment. To secure payment for his services, Dr. Allison had a written lien against the proceeds from Marmol's and Mendez's case. In 2005, Sneed settled Marmol's and Mendez's case and dispersed the settlement funds without withholding any of the monies he knew were due Dr. Allison. Sneed admitted that he was aware of Dr. Allison's lien. He also admitted that he settled the case but did not pay Dr. Allison the amount of the lien or withhold any of the money to protect the lien. Dr. Allison testified, without contradiction, that Sneed told him on multiple occasions that he would protect the lien. The Panel concluded that Sneed

---

[6] RPC 1.15 governs lawyer trust accounts, providing at section (a) that "[a] lawyer shall hold property and funds of clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own property and funds."

[7] RPC 8.1(b) requires a lawyer to respond to a demand for information from disciplinary authority.

failed to safeguard funds in which he knew Dr. Allison had an interest in violation of RPC 1.15.[8]  The Panel also found a violation of RPC 8.4(a).

*Elliott Ozment Matter*

In 2005, attorney Elliott Ozment, who was the chairman of the Nashville Bar Association's Committee on Immigration Law, filed a complaint with the Board arising out of Sneed's relationship with Carmen Ceja, a nonlawyer, and her business, Ceja Enterprises. Ozment complained to the Board that Ceja was engaged in the unauthorized practice of law, that Sneed practiced law in Ceja's offices, and that he accepted referrals from Ceja and acted under her direction.  Ozment complained that Sneed was "practicing law in the back room of Ceja Enterprises," and that Ceja "uses the fact that Michael Sneed is on her premises and approves her work as a marketing device to reassure unsuspecting foreign nationals that Ceja Enterprises is qualified and competent to do immigration work for her clients."  Ozment further claimed that Ceja "solicits cases and makes the decision on whether to accept a particular case, sets the fee to charge, and then does the work.  If an attorney is needed to make a personal appearance . . . she directs [Sneed] accordingly."

The Board charged Sneed with sharing fees with and assisting Ceja in the unauthorized practice of law.  Sneed admitted that he practiced law on the premises of Ceja Enterprises and that he accepted referrals from Ceja Enterprises.  He also admitted that he paid Ceja, although he claimed that it was for rent and interpretive services.  He denied that he acted under Ceja's direction or that they shared fees.

The Panel found that Sneed "practiced law with Ceja in a manner that was, or would mislead the public into believing that it was, a partnership or association with Ceja."  The Panel also found that "Ceja was engaged in the unauthorized practice of law [and] that [Sneed] assisted Ceja in that activity."  In addition, the Panel determined that "if Carmen Ceja and her employees were acting under [Sneed's] direction in legal matters, then he failed to provide them with proper supervision, and that he may instead have taken advice and direction from Carmen Ceja and her employees regarding his handling of cases referred to him by Ceja."  Based upon these findings, the Panel concluded that Sneed violated RPC 5.3,[9]

---

[8] RPC 1.15(c) provides in pertinent part that "[u]pon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person.  Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive."  (In 2008, this language appeared at RPC 1.15(b)).

[9] RPC 5.3 governs a lawyer's responsibilities regarding nonlawyer assistants.

5.4(b),[10] 5.5(b),[11] 7.6(b)(1)(ii),[12] 8.1(b), and 8.4(a), but that the evidence did not establish that Sneed was fee sharing with Ceja or paying her for referrals. The Panel noted that Sneed's testimony regarding his relationship with Ceja and her business was "lacking in clarity, consistency, or credibility."

*Anna Silva c/o Sean Lewis Matter*

Sean Lewis, a Nashville attorney, filed a complaint with the Board on behalf of Anna Silva which was based on five allegations: (1) Sneed ran an advertisement for legal services in a Hispanic publication in which his ad was part of a larger advertisement for Ceja Enterprises, (2) Carmen Ceja and Ceja Enterprises referred clients to Sneed, (3) Sneed had an office inside the offices of Ceja Enterprises, (4) Sneed met with clients at the offices of Ceja Enterprises, and (5) there was no signage at Ceja Enterprises indicating that Sneed had a separate law office on the premises. Sneed admitted all five allegations. The Panel found that for the reasons discussed in connection with the complaint of Elliott Ozment, Sneed violated RPC 5.7[13] and 8.4(a).

*Sean Lewis/Roldolpho Gonzalez Matter*

Sean Lewis filed a complaint with the Board regarding Roldolpho Gonzalez, one of Sneed's clients. Gonzalez paid $64.50 to Ceja Enterprises for the purpose of filing a lawsuit based on a promissory note that Ceja Enterprises had drafted for Gonzalez. Sneed then filed the suit. The $64.50 that Gonzalez paid to Ceja Enterprises was given to Sneed, who claimed that he used it to file the suit, although he could not recall whether he placed the money in

---

[10] RPC 5.4(b) provides that "[a] lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law."

[11] RPC 5.5(b) prohibits a lawyer from assisting "a person in the performance of activity that constitutes the unauthorized practice of law."

[12] RPC 7.6(b)(1)(ii) prohibits a lawyer from accepting referrals or compensation from an intermediary organization if the lawyer knows or reasonably should know that the organization is engaged in the unauthorized practice of law.

[13] RPC 5.7(a) provides in relevant part that "[a] lawyer shall be subject to the Rules of Professional Conduct with respect to the provision of law-related services . . . if the law-related services are provided:
(1) By the lawyer in circumstances that are not distinct from the lawyer's provision of legal services to clients; or
(2) By a separate entity controlled by the lawyer individually or with others if the lawyer fails to take reasonable measures to assure that a person obtaining the law-related services knows that the services of the separate entity are not legal services and that the protections of the client-lawyer relationship do not exist."

his trust account. Despite repeated requests from the Board to provide his trust account information regarding the Gonzalez matter, Sneed failed to provide the information.

The Panel found that Sneed assisted Ceja Enterprises and Carmen Ceja in the unauthorized practice of law; committed trust account violations; failed to respond to the Board's requests for information; engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation; and engaged in conduct prejudicial to the administration of justice, all in violation of RPC 1.15, 5.4(b) and (c), 5.5(b), 7.6(b)(1)(ii), 8.1(b), and 8.4(a), (c), and (d). However, the Panel again found that the evidence did not support a finding that Sneed compensated Carmen Ceja or her business for referrals.

*Margarita Kennen-Sanchez Matter*

In 2005, Margarita Kennen-Sanchez retained Sneed to represent her in an immigration matter and paid him $1,500 to appear with her at an immigration hearing in Memphis. According to Kennen-Sanchez, Sneed was late for the hearing, which had to be rescheduled because he failed to advise her that her husband also needed to be present at the hearing to resolve questions about their marriage. Apparently believing that she had received nothing of value from Sneed, Kennen-Sanchez complained that he should have refunded the fee she paid him. The Board alleged that Sneed was incompetent to handle immigration matters, failed to communicate with his client, and charged an excessive fee.

The Panel resolved most of the issues in favor of Sneed. Specifically, the Panel determined that the Board failed to prove that Sneed was incompetent to handle immigration matters, charged an excessive fee, or that he failed to communicate with his client. However, in deciding that Sneed had assisted Ceja Enterprises and Carmen Ceja in the unauthorized practice of law, the Panel noted that Kennen-Sanchez testified that her immigration petition had been prepared by Carmen Ceja, that Ceja gave her legal advice concerning a domestic matter, and that Ceja prepared correspondence to immigration authorities on her behalf.

*Panel Decision*

After hearing testimony on August 13 and 27, 2007, the Panel issued its judgment on January 25, 2008. In addition to its conclusions regarding the ethical rules Sneed violated with respect to each complaint as set forth above, the Panel recommended that Sneed be disbarred from the practice of law.

In support of its recommendation that Sneed be disbarred, the Panel found that Sneed "has not benefitted from prior discipline and that the public would be endangered and the legal profession and administration of justice would be disserved if [Sneed] were permitted

to continue the practice of law." The Panel further determined that Sneed intentionally violated the ethical rules and that his actions "resulted in both potential and actual serious injury." The Panel found several aggravating factors applicable, including (1) numerous prior disciplinary offenses, (2) a pattern of misconduct, (3) multiple offenses in the present action, and (4) Sneed's refusal to acknowledge the wrongful nature of his conduct. The Panel also observed that Sneed's repeated failures to respond in a timely manner to requests for information from the Board indicated a pattern and practice of disregard for the ethical rules. Further, the Panel found that Sneed failed to appreciate the severity of his ethical violations and that he could not recall prior instances of discipline arising from similar misconduct. Finally, the Panel observed that in representing himself before the Panel, Sneed repeatedly failed to respond to pleadings in a timely manner, showed a lack of understanding of the fundamental rules of evidence, and advanced legal positions that were wholly unsupported by the law or the facts. The Panel found no mitigating factors.

*Trial Court Proceedings*

On May 29, 2008, Sneed filed a petition for writ of certiorari in the Davidson County Circuit Court seeking review of the Panel's decision pursuant to Tennessee Supreme Court Rule 9, section 1.3. The petition challenged the Panel's decision on numerous grounds: (1) the Panel erred in considering the two supplemental petitions for discipline, (2) the Panel erred in failing to hold a pretrial conference, (3) the Panel erred by not allowing Sneed to call as witnesses disciplinary counsel Sandy Garrett or Mary Woodroof, the Board's executive secretary, (4) Sneed was denied the right to review public records regarding the performance of Panel members in prior cases, (5) the Panel members were biased against him, (6) the Panel considered evidence outside the pleadings, (7) the Panel erred in considering Sneed's trust account records, (8) the Panel erred in concluding that Sneed had a conflict of interest by simultaneously representing three claimants to the money seized by the federal government, (9) the evidence was insufficient to find that Sneed failed to keep Vickie Berry informed of the status of her case, (10) the evidence was insufficient to find that Sneed failed to safeguard money owed to Dr. Allison, (11) the evidence was insufficient to find that Sneed failed to properly maintain his trust account, and (12) the Panel's judgment was "void because it recommended disbarment."

The trial court, in a memorandum opinion filed December 22, 2008, thoroughly analyzed each of Sneed's challenges to the Panel's decision and rejected each one. Accordingly, the trial court affirmed the Panel's decision, including the sanction of disbarment.

9

## Standard of Review

As part of our duty to regulate the practice of law in Tennessee, this Court bears the ultimate disciplinary responsibility for violations of the ethical rules that govern the legal profession. Doe v. Bd. of Prof'l Responsibility, 104 S.W.3d 465, 469-70 (Tenn. 2003). Accordingly, this Court reviews disciplinary judgments in light of our "inherent power . . . and fundamental right to prescribe and administer rules pertaining to the licensing and admission of attorneys." In re Burson, 909 S.W.2d 768, 773 (Tenn. 1995).

When reviewing a hearing panel's judgment, a trial court considers "the transcript of the evidence before the hearing panel and its findings and judgment." Tenn. Sup. Ct. R. 9, § 1.3. The trial court has the discretion to receive additional proof only to resolve "allegations of irregularities in the procedure before the panel." Id. The standard of review applicable to the trial court and to this Court on appeal is set forth in Tennessee Supreme Court Rule 9, section 1.3, which provides that the Panel's findings may be reversed or modified if

> the rights of the petitioner have been prejudiced because the panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

Furthermore, the reviewing court "shall not substitute its judgment for that of the panel as to the weight of the evidence on questions of fact." Id. "In determining whether substantial and material evidence supports the panel's decision, the Court evaluates whether the evidence 'furnishes a reasonably sound factual basis for the decision being reviewed.'" Threadgill v. Bd. of Prof'l Responsibility, __ S.W.3d __, __, 2009 WL 4169438, at *10 (Tenn. 2009) (quoting City of Memphis v. Civil Serv. Comm'n of Memphis, 216 S.W.3d 311, 317 (Tenn. 2007)) (internal quotation marks omitted). Conclusions of law are reviewed de novo, without a presumption of correctness. Beard v. Bd. of Prof'l Responsibility, 288 S.W.3d 838, 854 (Tenn. 2009).

## Analysis

### *"Unlawful Procedure"*

As explained above, Tennessee Supreme Court Rule 9, section 1.3, provides that the decision of the Panel may be modified or reversed "if the rights of the petitioner have been

prejudiced because the panel's findings, inferences, conclusions or decisions are . . . made upon unlawful procedure." Sneed contends that the Panel's decision was made upon unlawful procedure because the Panel did not (1) conduct a prehearing conference, (2) authorize the filing of the two supplemental petitions for discipline, or (3) allow him to proffer the testimony of disciplinary counsel Sandy Garrett or Mary Woodroof, the Board's executive secretary. We address each of these arguments in turn.

A.

Sneed asserts that the Panel violated Tennessee Supreme Court Rule 9, section 13.6, by failing to hold a pretrial conference. Section 13.6 of Rule 9 provides that "[a] pre-hearing conference shall be held within sixty (60) days of the filing date of any petition commencing a formal proceeding." According to this rule, the purpose of the pretrial conference is to schedule deadlines for discovery, the filing of motions, the exchange of witness and exhibit lists, set a trial date, and resolve similar housekeeping matters. Id.

In this case, the record reflects that on June 9, 2006, the Board filed with the Panel a "Notice to Set Mandatory Pre-Hearing Case Management Conference." However, no such conference was ever scheduled or held. On August 27, 2007 – the second day of his hearing before the Panel – Sneed filed a motion to set a prehearing conference. The Panel denied the motion because a pretrial conference "could serve no point . . . halfway through the hearing." In addressing this issue, the trial court found that Sneed failed to show that he was prejudiced by the lack of a pretrial conference. The trial court noted that since no deadlines were imposed upon Sneed for discovery or the filing of motions, Sneed was allowed to and did continue to file motions up to and after the date of the hearing before the Panel.

In our view, the trial court correctly resolved this issue. Under Tennessee Supreme Court Rule 9, section 1.3, the purported unlawful procedure must have resulted in prejudice to the petitioner. Sneed does not specify in his brief what matters, if any, he would have presented to the Panel at a pretrial conference or otherwise explain how he was prejudiced by the failure of the Panel to conduct a pretrial conference.[14] As the trial court observed, the Panel did not impose any limitations on Sneed's ability to conduct discovery or file motions and he continued to file motions even while his hearing was underway. Moreover, Sneed did not request a pretrial conference until his hearing had already begun and, indeed, was in its second day. Under these circumstances, we agree with the trial court that Sneed is not entitled to relief based on the Panel's failure to conduct a prehearing conference.

---

[14] At oral argument before this Court, Sneed stated that had a pretrial conference been held he would have been able to challenge the filing of the supplemental petitions for discipline. However, the record reflects that he in fact raised that issue before the Panel and the Panel considered and rejected it.

11

B.

Sneed also asserts that the Panel acted unlawfully by allowing disciplinary counsel to file the two supplemental petitions for discipline without first seeking leave of the Panel. Sneed relies upon Tennessee Supreme Court Rule 9, section 23.3, which states that "[e]xcept as otherwise provided in these Rules, the Tennessee Rules of Civil Procedure and the Tennessee Rules of Evidence apply in disciplinary cases." Rule 15.04 of the Rules of Civil Procedure provides that "[u]pon motion of a party[,] the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading . . . ." Sneed moved to dismiss the two supplemental petitions filed against him on the ground that the Panel had not granted disciplinary counsel leave to file the petitions under Tennessee Rule of Civil Procedure 15.04.

The Panel, on October 13, 2006, filed a memorandum opinion finding that the supplemental petitions for discipline "seem appropriate in the event, as here, additional grounds for prosecution of formal charges are discovered after the filing of a petition." The Panel went on to note, however, that leave to file a supplemental petition for discipline was not required because the decision to file disciplinary proceedings was within the sole province of the Board. In addressing this issue, the trial court found that although the Panel erred in concluding that disciplinary counsel was not required to seek leave of the Panel before filing the supplemental petitions, Sneed was not entitled to relief on that basis because he had ample time to respond to the supplemental petitions and in fact did so. In other words, Sneed was not prejudiced by the purported error. The trial court also observed that, in view of the Panel's memorandum opinion of October 13, 2006, Sneed was on notice that the Panel had implicitly approved the filing of the supplemental petitions and that he was required to respond to the allegations. We find no error in the trial court's resolution of this issue, and likewise conclude that under these particular circumstances Sneed is not entitled to relief based on a violation of Tennessee Rule of Civil Procedure 15.04.

C.

Sneed next maintains that he was denied the right to present evidence to the Panel because the Panel refused to allow him to proffer the testimony of disciplinary counsel Sandy Garrett and the Board's executive secretary, Mary Woodroof. During discovery, Sneed submitted interrogatories to the Board which were answered by Garrett. He subsequently subpoenaed both Garrett and Woodroof for a deposition. The Davidson County Chancery Court quashed the subpoenas.

At his disciplinary hearing, Sneed sought to call Garrett and Woodroof as witnesses. He argued that Garrett's testimony was necessary in order for him to get documents

introduced into evidence that were part of her responses to his interrogatories. However, Garrett agreed to make the documents an exhibit and they were introduced as evidence during the hearing. The trial court found that the Panel did not err in refusing to allow Sneed to call Garrett as a witness because she had no personal knowledge of the facts related to the complaints against him. In addition, Sneed acknowledged at the hearing that Garrett's interrogatory responses were related to documents. Those documents were provided to Sneed and were introduced as evidence. Accordingly, like the trial court, we find that the Panel did not err in refusing to allow Sneed to call Garrett as a witness.

As to Woodroof, the chairman of the Panel asked Sneed during the hearing about the substance of her proposed testimony. Sneed responded that he wanted to establish that he had subpoenaed her for a deposition, the subpoena had been quashed, and that Woodruff did not attend the deposition. The parties then stipulated to these facts. The chairman of the Panel then asked Sneed, "[d]oes that take care of Ms. Woodroof's testimony?" Sneed responded, "that satisfies me, your Honor." Citing Tennessee Rule of Evidence 103(a) ("[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected"), the trial court found no error. Nor do we, particularly given that the parties stipulated to the substance of Woodroof's proposed testimony. We also note that in his brief filed in this Court, Sneed cites no authority or otherwise attempts to explain how the Panel or the trial court erred in resolving this issue. Thus, even if the issue had merit, which it does not, the issue would be waived. See Tenn. R. App. P. 27(a) ("The brief of the appellant shall contain . . . (7) [a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented . . . with citations to the authorities and appropriate references to the record.").

*Evidentiary Support for Panel's Conclusions*

Among the issues listed for review in his brief filed in this Court, Sneed includes the sufficiency of the evidence regarding the complaints of Vickie Berry, Enrique Lopez, Dwaine Allison, and the Panel's finding that he aided the unauthorized practice of law. However, he makes no argument and cites no authority in his brief in support of these issues. Thus, the question of whether the evidence is sufficient to support the Panel's findings is waived. See Tenn. R. App. P. 27(a)(7). It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.

Even if Sneed had properly challenged the sufficiency of the evidence, the record contains ample evidence to support the Panel's findings. As to Vickie Berry, the Panel found that Sneed did not keep her reasonably informed about the status of her case. The Panel

13

based its finding on Berry's testimony that "for four years, I was pretty much in the dark" because Sneed failed to respond to her phone calls and requests for information. This evidence was uncontradicted at trial and is clearly sufficient to support the Panel's conclusion.

Regarding the complaint of Enrique Lopez, it was undisputed that Sneed represented three claimants, including Lopez, to money seized by the federal government. Sneed admitted at the hearing that he represented all three claimants to the money and that he did not explain to them his potential conflict of interest. The Panel and the trial court correctly found that he should have done so as required by RPC 1.7(b).[15]

As to the complaint of Dr. Dwaine Allison, it was uncontroverted that Sneed represented two clients, Jose Marmol and Jesus Mendez, in a personal injury case. Sneed referred Marmol and Mendez to Dr. Allison for medical treatment. Thereafter, Sneed settled his clients' case and dispersed the settlement funds without withholding any of the monies he knew were due Dr. Allison. Sneed admitted that he was aware of Dr. Allison's lien against the settlement proceeds. He also admitted that he settled the case but did not pay Dr. Allison the amount of the lien or withhold any of the money to protect the lien. Dr. Allison testified that Sneed told him on multiple occasions that he would protect the lien. In our view, this evidence is sufficient to support the Panel's finding that Sneed failed to safeguard funds in which he knew Dr. Allison had an interest as required by RPC 1.15.

Regarding the various complaints that Sneed assisted Carmen Ceja and Ceja Enterprises in the unauthorized practice of law, the trial court found that there was sufficient evidence to support the Panel's conclusion that he in fact did so. We agree. The record contains undisputed evidence that Sneed practiced law on the premises of Ceja Enterprises, that Carmen Ceja and her employees were not lawyers, that she and Ceja Enterprises referred cases to Sneed, that Sneed appeared in an advertisement for Ceja Enterprises, and that he paid Ceja money, although he claimed it was for interpreters and rent.[16] In addition, there is Roldolpho Gonzalez's testimony that his promissory note was drafted by Ceja Enterprises and that he thought Carmen Ceja was a lawyer. He was advised to file suit on the note and paid Ceja Enterprises the filing fee. Sneed filed the lawsuit. At the time, he was practicing law at Ceja Enterprises and gave no outward indication, such as a sign, that his practice was distinct from the business of Ceja Enterprises. Further, Margarita Kennen-Sanchez testified

---

[15] RPC 1.7(b)(2) prohibits a lawyer from representing a client if the lawyer has a conflict of interest unless the client consents, in writing, following the lawyer's "explanation of the implications of the common representation and the advantages and risks involved."

[16] The Panel found that Sneed's testimony regarding his relationship with Ceja and her business was "lacking in clarity, consistency, or credibility."

14

that Carmen Ceja had given her advice concerning her immigration case, including telling her that "it was a sure thing." She also testified that Ceja prepared papers for her immigration hearing which Sneed then attended.

Considering this evidence as a whole, we have determined that the Panel had a sound factual basis to conclude Sneed aided Ceja and her business in the unauthorized practice of law. Again, Sneed has presented no argument to the contrary in his brief filed in this Court.

*Meaningful Review by the Trial Court*

Sneed maintains that he was denied a meaningful review in the trial court because the trial court purportedly failed to properly schedule and review his appeal from the Panel. Specifically, Sneed claims that he was unaware that his case was going to be heard on the merits by the trial court on September 22, 2008. According to Sneed, he thought that the trial court was only going to hear various motions he had filed. When the parties appeared in court on September 22, 2008, disciplinary counsel informed the trial judge that she had filed a motion to set the case for trial and that it was her understanding that the case had in fact been set for September 22, 2008. Accordingly, disciplinary counsel announced that she was ready to proceed with the trial. The trial judge stated that he too understood that the case had been set for trial on that date. Accordingly, the judge decided to proceed. The trial consisted of statements by counsel. No new evidence was introduced.

On October 14, 2008, approximately three weeks after the trial but more than two months before the trial court ruled, the Board filed the exhibits that had been introduced at the hearing before the Panel. On October 31, 2008, Sneed filed a "motion for rehearing or to strike the administrative record," arguing that he had not been prepared for the case to be heard on September 22, 2008. He also claimed that he was entitled to a new hearing because the exhibits were filed after September 22, 2008. The Board responded that Sneed was not prejudiced by the delay in filing the exhibits because the trial court had not yet ruled on the case. The trial court agreed and denied Sneed's motion, concluding that "the Court is satisfied that [Sneed] understood the matter was set for final hearing on September 22, 2008." The trial court also noted that Sneed did not identify any additional proof that he wanted to present, and further failed to identify any prejudice he suffered as a result of the filing of the exhibits after the hearing. In this Court, Sneed likewise does not identify any evidence he would have presented or any prejudice he suffered as a result of the late filing of the exhibits. Like the trial court, we conclude that this issue has no merit.

In short, we reject each of Sneed's procedural challenges to the conclusions of the Panel and the trial court. We now turn to the Panel's decision to sanction Sneed by recommending that he be disbarred.

15

In his brief filed in this Court, Sneed lists among his issues whether the discipline recommended by the Panel and affirmed by the trial court is excessive. He does not, however, argue the point or cite any authority in support of the issue. Thus, the issue is waived. See Tenn. R. App. P. 27(a)(7). Even if Sneed had properly challenged the sanction, we have concluded that the Panel correctly found that he should be disbarred from the practice of law.

To determine the appropriate level of attorney discipline, we are guided by the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards"). Tenn. Sup. Ct. R. 9, § 8.4. Section 3.0 of the ABA Standards identifies four factors to consider regarding the severity of a sanction: "(a) the duty violated; (b) the lawyer's mental state; and (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." Under section 9.22 of the ABA Standards, aggravating factors include, among other things, prior disciplinary offenses, a pattern of misconduct, multiple offenses, a refusal to acknowledge the wrongful nature of the misconduct, and substantial experience in the practice of law. The ABA Standards provide that disbarment is appropriate when "a lawyer engages in a pattern of neglect" that causes serious or potentially serious injury to a client, or when the lawyer "knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system." ABA Standards, §§ 4.41, 7.1.

In recommending that Sneed be disbarred, the Panel correctly considered and applied the ABA Standards. The Panel properly found that Sneed "has not benefitted from prior discipline and that the public would be endangered and the legal profession and administration of justice would be disserved if [Sneed] were permitted to continue the practice of law." The Panel further determined that Sneed intentionally violated the ethical rules and that his actions "resulted in both potential and actual serious injury." The Panel also noted, appropriately in our view, that Sneed's repeated failures to respond in a timely manner to requests for information from disciplinary counsel indicated a pattern and practice of disregard for the ethical rules. Further, the Panel found that Sneed failed to appreciate the severity of his ethical violations. Indeed, he could not recall prior instances of discipline arising from similar misconduct. Moreover, the Panel observed that in representing himself before the Panel, Sneed repeatedly failed to respond to pleadings in a timely manner, showed a lack of understanding of the fundamental rules of evidence, and advanced legal positions that were wholly unsupported by the law or the facts. Finally, the Panel found several aggravating factors applicable, including (1) numerous prior disciplinary offenses, (2) a pattern of misconduct, (3) multiple offenses in the present action, and (4) Sneed's refusal to

16

acknowledge the wrongful nature of his conduct. The Panel could have found a fifth aggravating factor – substantial experience in the practice of law – given that Sneed has been licensed since 1985.[17] The Panel found no mitigating factors, and no such factors have been suggested to this Court.

We agree with each of the Panel's findings as detailed above and agree that disbarment is the appropriate form of discipline. We do not reach this conclusion lightly, for we realize that Sneed's livelihood is at stake. At the same time, however, this Court takes seriously its obligation to supervise and regulate the practice of law. As part of our duty to regulate the legal profession, we have the ultimate responsibility for addressing ethical violations. Hughes v. Bd. of Prof'l Responsibility, 259 S.W.3d 631, 640 (Tenn. 2008). We issue licenses to those whom we deem qualified to engage in the practice of law and, when necessary, discipline attorneys who violate the rules governing the profession. Doe, 104 S.W.3d at 470. Those rules are clear that a "license to practice law in this State is a continuing proclamation by the Court that the holder is fit to be entrusted with professional and judicial matters, and to aid in the administration of justice as an attorney and as an officer of the Court." Tenn. Sup. Ct. R. 9, § 3.1. Furthermore, "[i]t is the duty of every recipient of that privilege to act at all times . . . in conformity with the standards imposed upon members of the bar as conditions for the privilege to practice law." Id. In short, a license to practice law in this state is not a right, but a privilege. Milligan v. Bd. of Prof'l Responsibility, __ S.W.3d __, __, 2009 WL 4637249, at *8 (Tenn. 2009).

It is apparent to us, as it was to the Panel and the trial court, that Sneed has fallen far short of conforming to the legal profession's ethical standards. A lawyer with Sneed's extensive record of ethical infractions simply cannot be permitted to continue practicing law in our courts. He has not heeded lessons from facing numerous prior disciplinary proceedings and, in fact, continues to repeat the same mistakes.[18] Furthermore, as far as this record shows, he has not acknowledged the wrongful nature of his conduct, and we have been unable to find even a hint of remorse in the record before us. Perhaps worse, Sneed's repeated, intentional disregard of the ethical rules undermines the protection of the public and the preservation of the public's confidence in the legal system. Indeed, the pattern and pervasive nature of the unethical conduct committed by Sneed, coupled with his apparent unwillingness to abide by the rules of the profession despite years of disciplinary action taken against him, can do little but add to the cynicism about lawyers and foster disrespect for the

---

[17] Mr. Sneed's disciplinary history reflects that he has been actively practicing law for many years since being licensed.

[18] For example, Sneed was before this Court in 2001 having violated some of the same ethical rules that he stands adjudged to have violated today. See Sneed v. Bd. of Prof'l Responsibility, 37 S.W.3d 886, 889-90 (Tenn. 2001).

17

administration of justice that ultimately does great harm to the public, the legal system, and the profession of law. In light of all these circumstances, we have concluded that the Panel and the trial court appropriately found that Sneed should be disbarred.

## Conclusion

For the reasons stated above, we affirm the trial court's judgment in all respects, including Sneed's disbarment from the practice of law. This opinion is not subject to rehearing under Tennessee Rule of Appellate Procedure 39 and, in order to protect the public, is effective immediately under Supreme Court Rule 9, Section 18.5. The Clerk is directed to certify this opinion as final and issue the mandate immediately as provided by Tennessee Rule of Appellate Procedure 42(a). Costs of this appeal are assessed to Michael Sneed, and his surety, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE