
**FILED**

**December 19, 2016**

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 9:11 A.M.



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Carolyn Beecher | ) | Docket No. 2016-08-0279 |
| | ) | |
| v. | ) | State File No. 97742-2015 |
| | ) | |
| McKesson Corporation, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims, | ) | |
| Amber E. Luttrell, Judge | ) | |

---

### Affirmed and Remanded - Filed December 19, 2016

---

In this interlocutory appeal, an assembly line worker alleges she suffered pelvic organ prolapse after engaging in heavy lifting activities at work. The employer denied the claim on the basis that the worker's injuries were not causally related to her employment. Following an expedited hearing, the trial court ruled that the worker had not presented sufficient medical evidence that her injuries were work-related and denied benefits. The worker has appealed. We affirm the trial court's decision and remand the case.

Presiding Judge Marshall L. Davidson, III, delivered the opinion of the Appeals Board in which Judge David F. Hensley and Judge Timothy W. Conner joined.

Carolyn Beecher, Memphis, Tennessee, employee-appellant, pro se

Thomas P. Cassidy, Jr., Memphis, Tennessee, for the employer-appellee, McKesson Corporation

**Memorandum Opinion**[1]

Carolyn Beecher ("Employee") alleges experiencing pelvic organ prolapse as a result of lifting while in the course and scope of her employment with McKesson Corporation ("Employer") on November 16, 2015.[2] Employee alleges that on that date, she was performing her duties on an assembly line when she lifted a heavy item from a conveyor belt and felt pain in her abdomen. According to the trial court's order, Employee testified that, after working additional shifts, her condition worsened and she noticed a protrusion at her vaginal opening. She testified that she attempted to report the incident to Employer's human resources personnel on November 30, 2015. However, when she was unable to contact anyone in the human resources office, she informed "Nicole" of her injury.[3] According to the trial court's order, Employer's human resources representative, Rick Clifton, testified that Employee reported the work accident to Employer on December 10, 2015.

Employee was examined by a gynecologist, Dr. Elizabeth Mann, who noted that Employee complained of pain that had begun two weeks prior and a protrusion at her vaginal opening. She referred Employee for a surgical consult with Dr. Stephen Portera, who recommended surgery to address Employee's condition. Dr. Portera performed the surgery and released Employee to return to work with lifting restrictions and a prescription for physical therapy.

After her surgery, Employee was provided a panel of physicians from which she selected a medical group that included Dr. Corey Tinker. Dr. Tinker examined Employee and observed that she had suffered pelvic organ prolapse and that she was required to perform heavy lifting for her employment. He opined that "[p]elvic organ prolapse is always multi-factorial but with the nature of the patient's work and the way in which the symptoms presented, I do feel it likely" her condition was work-related. Dr. Tinker noted, however, that his ability to render an opinion was limited because he had not seen her prior to her surgery.

Dr. B. Todd Chappell, a gynecologist, performed a records review at Employer's request. Dr. Chappell indicated that pelvic organ prolapse is multifactorial with a variety of risk factors, several of which applied to Employee. He opined that "from information

---

[1] "The Appeals Board may, in an effort to secure a just and speedy determination of matters on appeal and with the concurrence of all judges, decide an appeal by an abbreviated order or by memorandum opinion, whichever the Appeals Board deems appropriate, in cases that are not legally and/or factually novel or complex." Appeals Bd. Prac. & Proc. § 1.3.

[2] Because neither a transcript of the trial court proceedings nor a statement of the evidence has been provided, we have gleaned the facts from the pleadings and the trial court's order.

[3] It is unclear who "Nicole" is or what her position with Employer may be.

2

I have reviewed and considered because of these various pre-existing risk factors, [Employee's] condition cannot be associated to one work incident on a particular day with any precision, accuracy, or reliability." He further opined that "considering all causes and pre-existing factors, it is my opinion that even if a work incident was a potential contributing factor, work was no more than a possible minor contributing factor . . . that led to [Employee's] condition."

In light of the conflicting medical opinions, the parties took Dr. Tinker's deposition. Dr. Tinker acknowledged that he did not have Dr. Portera's records or an ultrasound report regarding Employee's history of uterine fibroids and bladder prolapse when he rendered his initial opinion. Dr. Tinker testified that pelvic organ prolapse is multifactorial and that

> [t]he extent to which one thing contributes more than something else is more of a legal question than a medical one, and so doctors don't spend their time trying to figure out what percentage of each one of those factors had impact. So it's a difficult question to answer for a doctor. . . . Based on the limited information that I had in having seen it after correction, my assessment was that, certainly, I thought work had an important role. Was that 35 percent, 49 percent, 52 percent, 57 percent? That's not a medical question and I don't know how to answer that.

Dr. Tinker acknowledged that assigning a percentage of the responsibility for Employee's condition to her employment would be speculative and agreed that the employment might bear no responsibility for the injury.

On the basis of these medical opinions, the trial court determined Employee had not presented sufficient medical evidence to establish she is likely to succeed at trial in proving her pelvic organ prolapse was the result of her employment. Accordingly, the trial court denied benefits. We are unable to conclude that the trial court erred in declining to award benefits at this interlocutory stage.

First, the only medical opinions provided are equivocal at best. Dr. Tinker, an authorized physician, opined that he was unable to state that the employment contributed more than fifty percent to the injury as required by Tennessee Code Annotated section 50-6-102(14) (2015). Dr. Chappell, the physician who performed a records review at Employer's request, opined that Employee's condition was not causally related to the employment.

Second, Employee testified regarding the incident forming the basis of her claim, her injuries, and the course of the medical care for those injuries. However, we have been provided with no record of this testimony. Moreover, no statement of the evidence has been filed. Thus, the totality of the evidence introduced in the trial court is unknown,

3

and we decline to speculate as to the nature and extent of the proof presented to the trial court. Instead, consistent with established Tennessee law, we presume that the trial court's ruling was supported by sufficient evidence. *See Leek v. Powell*, 884 S.W.2d 118, 121 (Tenn. Ct. App. 1994) ("In the absence of a transcript or a statement of the evidence, we must conclusively presume that every fact admissible under the pleadings was found or should have been found favorably to the appellee.").

Third, in her notice of appeal, Employee fails to identify any issues for review, asserting only that she "had her evidence," that her "medical records spoke for [themselves]," and that she had not suffered from her condition prior to the November 16, 2015 incident at work. She has submitted no brief on appeal, has not made any argument, and has not explained how the trial court erred in resolving her case. As stated by the Tennessee Supreme Court, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Sneed v. Bd. of Prof'l Responsibility of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010). Indeed, were we to search the record for possible errors and raise issues and arguments for Employee, we would essentially be acting as her counsel. The law clearly prohibits us from doing so. *See Webb v. Sherrell*, No. E2013-02724-COA-R3-CV, 2015 Tenn. App. LEXIS 645, at *5 (Tenn. Ct. App. Aug. 12, 2015).

Accordingly, the trial court's decision is affirmed and the case is remanded for any further proceedings that may be necessary.

**FILED**

**December 19, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 9:11 A.M.**



**TENNESSEE BUREAU OF WORKERS' COMPENSATION
WORKERS' COMPENSATION APPEALS BOARD**

| | | |
|---|---|---|
| Carolyn Beecher | ) | Docket No.   2016-08-0279 |
| | ) | |
| v. | ) | State File No.  97742-2015 |
| | ) | |
| McKesson Corporation, et al. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 19th day of December, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Carolyn Beecher | | | | | X | carolynbeecher1@yahoo.com |
| Thomas P. Cassidy, Jr. | | | | | X | tom.cassidy@mgclaw.com |
| Amber E. Luttrell, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Jeanette Baird
Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-0064
Electronic Mail: Jeanette.Baird@tn.gov