

**FILED**
**Mar 30, 2026**
**09:25 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Erica Lee | Docket No. 2025-80-1847 |
| v. | State File No. 54071-2023 |
| Amazon, et al. | |

Appeal from the Court of Workers'
Compensation Claims
Shaterra R. Marion, Judge

---

### Affirmed and Remanded

---

The employee questions the trial court's denial of medical and temporary benefits in this interlocutory appeal. The employee reported pain in her shoulder from an incident at work. She received authorized medical treatment, and upon placing her at maximum medical improvement, the authorized treating physician opined the employee's condition and need for future medical treatment were not primarily caused by the injury with the employer. Thereafter, the employee sought treatment with an unauthorized physician, who opined that the employee's condition was caused by her work injury. After an expedited hearing, the court found the employee did not come forward with sufficient evidence that she would likely prevail at trial in establishing that the work injury was the primary cause of her condition and need for additional medical treatment and denied her request for benefits. The employee has appealed. Having carefully reviewed the record, we affirm the trial court's interlocutory order denying benefits and remand the case.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

Olufemi Satu, Southaven, Mississippi, for the employee-appellant, Erica Lee

Tiffany S. Hranicky, Knoxville, Tennessee, for the employer-appellee, Amazon

1

**Memorandum Opinion**[1]

On July 11, 2023, Erica Lee ("Employee"), who worked for Amazon ("Employer"), was pulling a loaded cart when a wheel on the cart broke. According to Employee, her right arm was jerked forward, causing her to lose her balance and brace herself with her left arm to prevent a fall. Employee reported the incident and sought emergency medical treatment for her right arm complaints at Methodist Hospital. Initial x-rays were read as normal, and Employee was discharged with instructions to follow up with her primary care provider. Employee obtained further medical treatment with an occupational medicine provider and underwent an MRI on October 13, 2023, which revealed a full-thickness partial rotator cuff tear of the right shoulder, as well as severe AC joint osteoarthritic changes. Thereafter, Employer provided a panel of orthopedists, and Employee selected Dr. Riley Jones, who initially saw her on November 22, 2023. Dr. Jones reviewed the MRI results and performed a cortisone injection; he also prescribed physical therapy and restricted her from using her right arm. Employee returned to Dr. Jones on February 20, 2024, having completed the physical therapy. During that visit, Employee indicated she had been seeing her primary care physician for left arm complaints and had been restricted from using her left arm by that physician. She also complained that "they" were giving her work sitting in the cafeteria "basically doing nothing," and she did not think she should have to go to work "to do nothing."[2] Dr. Jones responded that he was authorized only to treat the right arm/shoulder and he could only restrict her use of that arm. He also referred Employee for an EMG.

There is no indication in the record that Employee had the EMG before returning to Dr. Jones on April 18, 2024. At that time, he placed Employee at maximum medical improvement ("MMI") and assigned permanent restrictions of no lifting above twenty pounds, no lifting above chest level, and no overhead work. Dr. Jones completed a Final Medical Report on April 20, 2024, assigning a four percent permanent impairment and indicating Employee was completely restricted from working from March 14, 2024 until April 17, 2024.

Sometime thereafter, Employer became aware that Employee had been involved in an altercation in her position as a security guard with a subsequent employer. Counsel for Employer sent a questionnaire to Dr. Jones, asking if he was aware Employee had been working outside of her restrictions as a security guard since the alleged accident. Dr. Jones responded to the questionnaire on February 2, 2025, and marked that he did not know about Employee's work for the other employer. The questionnaire went on to ask:

---

[1] This decision is being filed pursuant to Tenn. Comp. R. and Regs. 0800-02-22-.03(1) (2023).

[2] Employee testified she did not return to Employer after July 11, 2023, and she obtained employment with two other employers after that date. It is unclear from the record where she was employed at the time of the February 2024 appointment with Dr. Jones.

Based on the fact that [Employee's] limitations associated with her alleged shoulder injury did not seem to be present during her employment for her subsequent employer, can you say to a reasonable degree of medical certainty that she had symptoms to her shoulder as a result of a work-related injury that occurred at [Employer] on July 11, 2023?

Dr. Jones again marked "No," stating, "In reviewing the history[,] this appears to be more of a degenerative tear than traumatic." Dr. Jones further indicated that he could not say to a reasonable degree of medical certainty that Employee's ongoing symptoms were primarily related to the original injury "as opposed to altercations after" the July 2023 work accident. Finally, he stated Employee's injury "appears to be [greater than] 51% degenerative" and opined there was not any medically necessary treatment from the incident with Employer "at this time."

Employee sought treatment on her own with Dr. David Buechner, a radiologist. Her initial appointment with Dr. Buechner was in May 2025, at which time he reviewed an MRI from April 23, 2025 and stated "there are clearly chronic findings related to the right shoulder . . . . The partial width full-thickness rotator cuff tear of the supraspinatus tendon may also have an acute aspect . . . . Noting [Employee's] history of symptomatology, her acute right shoulder injuries were, within a reasonable degree of medical certainty, caused by the work accident on [July 11, 2023]."[3] Dr. Buechner referred Employee for laser therapy, and she later indicated improvement in her shoulder symptoms from the laser treatment at her June 12, 2025 appointment. Employee further reported seeing an "ortho" for her knees and stated that she planned to make an appointment to see him about her shoulder.

Based on the conflicting causation opinions, Employee filed a request for expedited hearing, seeking additional medical and temporary disability benefits arising from the July 2023 work accident. At the January 2026 expedited hearing, Employee testified as to how the accident with Employer occurred, and she admitted to becoming involved in an altercation between a coworker and a patient in December 2023 at a subsequent place of employment. In its January 28, 2026 order, the trial court observed that neither party provided necessary information regarding any potential entitlement to temporary total disability benefits ("TTD"), although Employer filed a ledger indicating it paid benefits from April 18, 2024 until November 18, 2024. The court went on to find that Dr. Jones's opinion regarding causation and medical necessity was presumed to be correct and that Dr. Buechner's opinion was insufficient to rebut the presumption. It further denied Employee's TTD claim because she failed to establish the period of disability. Employee has appealed.

---

[3] There is no indication in the record that Dr. Buechner compared the April 2025 MRI report with the October 2023 MRI report, or that he had access to it.

Employee stated the following issues in her notice of appeal: (1) "Improper Reliance on Post-MMI Defense Questionnaire"; (2) "Misapplication of the Authorized Treating Physician Presumption"; (3) "Mischaracterization of Dr[.] Buechner's Causation Opinion"; and (4) "Legal Error in TTD Analysis." Although a transcript was filed by Employer, Employee did not file a timely brief in support of her appeal.[4] For its part, Employer argues in its brief that this appeal is frivolous.

As stated by the Tennessee Supreme Court, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Sneed v. Bd. of Prof'l Resp. of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010). "[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Id.* It is not our role to search the record for possible errors or to formulate a party's legal arguments where that party has provided no meaningful argument or authority to support its position. *Cosey v. Jarden Corp.*, No. 2017-01-0053, 2019 TN Wrk. Comp. App. Bd. LEXIS 3, at *8 (Tenn. Workers' Comp. App. Bd. Jan. 15, 2019).

Without any legal argument from Employee, we conclude the preponderance of the evidence supports the trial court's finding that Employee was unlikely to be successful in proving that her current shoulder condition is primarily caused by the July 2023 incident with Employer. Although the trial court had the opportunity to hear and observe in-person testimony, when it comes to medical records and questionnaires, we are "in the same position as the trial court to make credibility determinations." *Edwards v. Peoplease, LLC*, No. W2024-01034-SC-R3-WC, 2025 Tenn. LEXIS 514, at *18 (Tenn. Dec. 22, 2025). Thus, "the reviewing court may draw its own conclusions about the weight and credibility of the expert testimony." *Id.* (internal citation and quotation marks omitted). Dr. Jones's opinions given in response to the questionnaire have a presumption of correctness, and Dr. Buechner's opinion, based in part on his review of an MRI completed nearly two years after the work accident and with no comparison to the prior MRI completed in October 2023, does not rebut that presumption. *See* Tenn. Code Ann. § 50-6-102(12)(E) (2025).[5] Thus, we conclude the preponderance of the evidence supports the trial court's order.

---

[4] Employee's counsel filed a motion for extension of time in which to file a brief. However, it was filed well after the deadline for filing a brief and sought an extension beyond our statutory authority. *See* Tenn. Comp. R. & Regs. 0800-02-22-.04(1) (2023). We denied the motion, and Employee's counsel then filed a motion to reconsider and to accept a late-filed brief, which was attached. For the same reasons noted above, that motion is denied, and we have not considered Employee's brief in this appeal.

[5] As Employee did not meet her burden regarding the primary cause of her current shoulder condition at this stage of the litigation, she has also not met her burden regarding her TTD claim. "An injured worker is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) *there is a causal connection between the injury and the inability to work*; and (3) the worker established the duration of the period of disability." *Jones v. Crencor Leasing and Sales*, No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015) (emphasis added).

Regarding Employer's contentions on appeal, we do not find Employee's appeal to be frivolous. A frivolous appeal is one that is devoid of merit or brought solely for delay. *See Yarbrough v. Protective Servs. Co., Inc.*, No. 2015-08-0574, 2016 TN Wrk. Comp. App. Bd. LEXIS 3, at *11 (Tenn. Workers' Comp. App. Bd. Jan. 25, 2016); *see also Burnette v. WestRock*, No. 2016-01-0670, 2017 TN Wrk. Comp. App. Bd. LEXIS 66, at *15 (Tenn. Workers' Comp. App. Bd. Oct. 31, 2017). As there are two conflicting medical opinions regarding the primary cause of Employee's shoulder condition, we decline to determine that this appeal is frivolous.

For the foregoing reasons, we affirm the decision of the trial court and remand the case. Costs on appeal are taxed to Employee.