IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 1, 2016

**MELINDA K. FIELDS v. NEIL M. FRIEDMAN**

**Appeal from the Juvenile Court for Sullivan County
No. J14780, J14781  David W. Tipton, Judge**

_____

**No. E2016-00328-COA-R3-JV – Filed July 21, 2016**

_____

Mother appeals the juvenile court's child support determinations.  Because Mother failed to file a brief in compliance with the Tennessee Rules of Appellate Procedure and failed to present arguments to support her contentions, we affirm the decision of the juvenile court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CHARLES D. SUSANO, JR., J., joined.

Melinda K. Fields, Kingsport, Tennessee, Pro Se.

Katherine W. Singleton, Kingsport, Tennessee, for the appellee, Neil M. Friedman.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Melinda Fields ("Mother") and Neil Friedman ("Father"), who have never been married, are the parents of two minor children, Danielle (born in September 1998) and Joshua (born in September 2006).  On August 5, 2015, Mother filed an "Emergency Motion to Modify Support and All Retro Support."[1]  Mother alleged, in pertinent part, as follows:

2.  The first hearing on support for Danielle N. Friedman was in Kingsport

---

[1] The record on appeal begins with this pleading.  The parties' motions state that the trial court previously addressed child support, including the issue of retroactive child support.  With one exception, however, these orders do not appear in the record.

Juvenile in 2001 and no retro support was issued at that time because Mother didn't want retro at that time based on the income Neil Friedman said he was making based on the paycheck he wrote himself from his company.

3. Child support was set in 2001 for Danielle Friedman in the amount of $120.00 a week and it has remained $120.00 a week until it was changed by this court to $366.69 a week in 2010.

4. The first actions for support for Joshua Friedman was [sic] in 2009 in this court. So, Joshua received no support between 2006-2009 from his father Neil Friedman. . . . Neil signed the birth certificate the day [Joshua] was born and I still had to do DNA testing before support was set at $366.69 a week for both kids in 2010.

5. Proof of the father's income in the court orders one being filed on 11/19/12[2] was a implemented [sic] order signed for me by my attorney at that time clearly states Neil's income for 2009-2011 is as follow[s]

> 2009: $239,113.00
> 2010: $350,980.00
> 2011: $304,018.00

6. Proof provided by Child Support Enforcement Service: See exhibit B— payments made by Neil Friedman for the times thru 2009-2011 are as follow[s]:

> 2009: $6,276.40
> 2010: $12,918.19
> 2011: $19,067.88

. . .

8. The last order entered in this matter was on July 30, 2013. The child support work sheet the income shares page 5 of 7 in the order states "0" days with the mother? The work sheet dated 7/23/13 "exhibit A" in the same order has both children's last name listed as "Fields"?

9. On May 18, 2013 my income changed[.] I could no longer make the money I had before with my cleaning company I owned Faithful Stewards Cleaning. . . .

10. Mr. Friedman is the owner of Sossner and has [an] extravagant life style including recreational drug use which has resulted in him spending the majority of both our children's life incarcerated or on drugs.

11. The Father Neil Martin Friedman D.O.B. 2/18/64 has caused [undue] hardship on his son . . . and daughter . . . from 1998 thru 2015 by not paying the proper amount of child support to them both.

Mother prayed that the trial court determine Father's income, set retroactive child support, and set current child support with a deviation from the guidelines. She further prayed for the

---

[2] This order was included as Exhibit A to Mother's motion.

trial court to "realize that Mr. Friedman has . . . fraudulently failed to disclose his real income and failed to disclose his assets when considering the needs of his children for the support." Mother asked that Father be required to continue paying all copays and medical expenses for both children.

Attached as an exhibit to Mother's motion is an order filed by the trial court on November 19, 2012. The stated purpose of the November 2012 order is to implement three paragraphs of an order entered by the court on August 30, 2012. The trial court found that the parties had agreed to the following findings of fact: Mother's average gross monthly income, based upon her tax returns for the years 2009, 2010, and 2011, was determined to be $2,151.41. Father's average gross monthly income, based upon his tax returns for the same years, was determined to be $24,836.41. Father's retroactive child support obligation for the period from June 1, 2010 through July 21, 2012 was calculated to be $2,487.00 per month. Father's current child support obligation effective August 1, 2012 was calculated to be $1,746.00 per month.[3]

On August 19, 2015, the trial court entered an order on an emergency motion to modify visitation filed by Mother in June 2015. Pursuant to this order, Father was given supervised parenting time with Joshua one day every other weekend. Parenting time with Danielle was to be worked out between Father and Danielle. Father was required to submit to drug testing. Father's parenting time was to be reviewed by the trial court on October 6, 2015.

Father filed his response to Mother's emergency motion to modify support on October 2, 2015. He denied that an upward deviation was warranted and pled the defense of collateral estoppel with respect to Mother's request for retroactive child support. Father denied that Mother was entitled to any of the relief she requested. He filed a countermotion for a downward deviation in child support and requested that Mother be required to pay her pro-rata share of the children's uncovered medical and dental expenses.

The case was heard on October 6, 2015. The trial court found no significant variance in the amount of child support from the previous order dated August 21, 2013;[4] thus, there was no basis for modification of the amount of child support.[5] The trial court denied

---

[3] Father had Joshua 285 days a year; Mother had Danielle 285 days a year.

[4] This order does not appear in the record.

[5] According to defense counsel, at the time of the August 21, 2013 order, Father's monthly income was $23,891.00, and Mother's monthly income was $1,499.00. For purposes of the current hearing, the parties used the 2014 tax returns. Thus, Father's monthly income was $27,708.00. Mother's monthly income was set at $1,499.00. The trial court found that the increase in Father's income did not, however, result in a fifteen percent increase in the amount of child support as required by the guidelines for a significant variance. TENN.

Mother's request for retroactive child support on the ground that the court had previously determined the issue of retroactive child support and could not revisit the issue. The trial court further denied Mother's request for an upward deviation in monthly child support paid by Father and Father's motion for a downward deviation in his monthly child support. The court approved and adopted a permanent parenting plan and child support worksheet. Father was awarded unsupervised parenting time every other weekend from Friday evening until Sunday evening.

On appeal, Mother argues that the trial court erred in failing to order the proper amount of child support, in failing to order retroactive child support, in failing to find that Father fraudulently failed to disclose the total amount of his income, and in relying on the doctrine of collateral estoppel. In addition to opposing Mother's arguments, Father asserts that Mother's brief is insufficient and that her appeal is frivolous.

ANALYSIS

Mother is representing herself in this appeal. With respect to pro se litigants, this Court has stated the following guiding principles:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003) (citations omitted).

We must agree with Father that Mother's brief is insufficient because it fails to comply with the rules set forth in Tenn. R. App. P. 27(a) and Tenn. R. Ct. App. 6. Mother's statement of facts does not include references to the record and includes statements that are not supported by the record. Thus, her statement of facts fails to comply with Tenn. R. App. P. 27(a)(6), which requires that the statement of facts include "appropriate references to the record." Mother's brief also includes attachments that do not appear in the record, and she references these documents in her argument. Rule 13(c) of the Tennessee Rules of Appellate Procedure provides that, on appeal, courts "may consider those facts established by the evidence in the trial court and set forth in the record" and any other facts that are judicially noticed or considered as post-judgment facts under Tenn. R. App. P. 14. Thus, we cannot

---

COMP. R. & REGS. 1240-02-04-.05(2)(c).

consider matters appended to her brief that are not part of the record on appeal.

Tennessee Rule of Appellate Procedure 27(a)(7)(A) provides that the appellant's brief must contain an argument setting forth "the contentions of the appellant with respect to the issues presented, and the reasons therefore, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record." Rule 6(a) of the Tennessee Court of Appeals Rules requires that, for each issue, the written argument contain:

> (1)     A statement by the appellant of the alleged erroneous action of the trial court which raises the issue . . . with citation to the record where the erroneous . . . action is recorded.
> (2)     A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.
> (3)     A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.
> (4)     A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.

Mother's entire argument section is one page long, and that page contains very little, if any, actual argument. Rather, Mother used this section largely to make statements of fact not supported by the record and statements of opinion. For example:

> I believe [Father] has tried to hide his income and deceive the court system to avoid paying what is owed to his children. Both of our children are Autistic and would have benefited greatly from income he should have provided to them. In May of 2013, I had a brain aneurysm and was unable to work at the cleaning company I owned Faithful Stewards Cleaning. Neil knew this and even kept our son Joshua while I was in Vanderbilt. I believe he is using the court system to further continue the domestic violence, knowing my income was drastically reduced he still ask[ed] the court to reduce child support.

Mother included no references to the record.

We will examine each of Mother's four issues in turn. With respect to the issue of the amount of child support, Mother's argument includes statements that the child support guidelines set the presumptive amount of support but the trial court has discretion to deviate from that amount. She does not offer any specific amount of child support to which she thinks she is entitled or any way in which the trial court erred, only a general statement that the trial court can deviate. This is not a sufficient argument. The court has no way of knowing what it is that Mother is seeking. As to retroactive support, Mother makes only this

statement: "If retro support is ordered, I would like for it to be placed into an account for my children for their future." Mother previously stated that she was seeking only "what is fair and best for the children." She does not, however, explain her position as to what that would be in terms of current or retroactive child support. We consider both of these issues to be waived due to the insufficiency of Mother's argument. *See Cartwright v. Jackson Capital Partners, Ltd. P'ship*, 478 S.W.3d 596, 614 (Tenn. Ct. App. 2015) (quoting *Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010)) ("'It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.'"); *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (holding that the failure to cite to any legal authority or to fashion an argument constitutes waiver of an issue).

As to the issues Mother raised concerning Father's alleged fraudulent concealment of his true income and whether the trial court properly applied the doctrine of collateral estoppel, these arguments are not even mentioned in the argument section of her brief. Therefore, these arguments are also waived.

CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court. We decline Father's request to find this to be a frivolous appeal. The costs of appeal are taxed against the appellant, Melinda K. Fields, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE