

FILED

**February 9, 2017**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

Time: 8:00 A.M.

**TENNESSEE BUREAU OF WORKERS' COMPENSATION
WORKERS' COMPENSATION APPEALS BOARD**

| | | |
|---|---|---|
| Ceasar Gamble | ) | Docket No.   2016-01-0372 |
| | ) | |
| v. | ) | State File No. 63828-2015 |
| | ) | |
| Miller Industries, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Thomas Wyatt, Judge | ) | |

---

**Affirmed in Part, Vacated in Part and Remanded -
Filed February 9, 2017**

---

In this interlocutory appeal, the employer contests the trial court's award of medical benefits to the employee, who fell at work and suffered compensable injuries to his left hip and low back.  The authorized treating physician recommended a hip replacement and the employer denied that treatment, contending the need for the hip replacement did not arise primarily out of the employment.  At the request of the employee, and without objection from the employer, the trial court rendered a decision without convening an evidentiary hearing, determining the employee was likely to prevail at a hearing on the merits in establishing his entitlement to the requested medical benefits but denying the request for temporary disability benefits.  Both parties have appealed.  We affirm the trial court's award of medical benefits for treatment of the employee's compensable left hip and low back injuries and its denial of temporary disability benefits, but vacate the trial court's finding that the employee will likely prevail in establishing that his need for the hip replacement surgery arose primarily out of the employment.  We remand the case for further proceedings as may be necessary.

Judge David F. Hensley delivered the opinion of the Appeals Board in which Presiding Judge Marshall L. Davidson, III, and Judge Timothy W. Conner joined.

Eric Shen, Brentwood, Tennessee, for the employer, Miller Industries, Inc.

Ceasar Gamble, Chattanooga, Tennessee, employee, pro se

1

## Factual and Procedural Background

Ceasar Gamble ("Employee") suffered injuries on August 14, 2015, while in the course and scope of his employment with Miller Industries, Inc. ("Employer"), when the stool he was attempting to sit on rolled out from under him, causing him to fall. The claim was accepted as compensable, and Employer provided authorized medical care for Employee's low back and left hip injuries. Employee initially sought medical care from the emergency department at Memorial Hospital in Chattanooga. A pelvic CT scan revealed no evidence of traumatic injury, but indicated severe left hip osteoarthritis, evidence of a right hip arthroplasty, and lumbar degenerative disc disease and facet arthropathy.

On August 24, 2015, Employee treated at Physician's Care, a walk-in clinic, complaining of "constant left side pain since Fri. Aug 14, 2015." He denied a history of similar problems and was diagnosed with lumbar sprain or strain and left hip/thigh sprain or strain.

Employee received medical treatment at Nova Medical Centers on multiple occasions from August 24, 2015 through January 2016, including physical therapy. While the record includes several work status forms from Nova Medical Centers, it does not include any office notes for Employee's visits other than a January 12, 2016 note signed by Dr. Daniel Callan. That record reflects that Employee reported a "sudden onset of pain [in his] head and hip while [at] work," noting that Employee "claims [he] fell and hit his left hip and head when a chair rolled away when he went to sit down." It states that a left hip MRI revealed "[a]dvanced left hip arthropathy with marked cartilage loss, femoral head subluxation, subchrondral cysts, mixed reactive acetabular bone changes, marginal osteophytes, moderate left hip effusion with 10mm probable cartilaginous loose body in the anterior recess, [and] diffuse labral degeneration without discrete tear." The report states that Employee was "advised to follow-up with his/her primary care doctor for positive review of systems that are not related to the injury."

Employee was provided authorized medical treatment with Dr. Alexander Roberts, an orthopedist, whom he first saw on February 4, 2016 for complaints of "lumbar spine and [left lower extremity] pain with [numbness and tingling] and weakness."[1] At a March 7, 2015 visit, Dr. Roberts injected Employee's left hip for therapeutic and diagnostic purposes, noting that prior to leaving, Employee reported "100% total improvement of [his] symptoms." At the following visit on March 31, 2016, Dr. Roberts noted that although the hip injection provided significant relief of hip pain, Employee "continues to experience left lower back pain consistent with a lumbar etiology." Dr.

---

[1] Dr. Roberts provided treatment for Employee's low back complaints, which ultimately resolved. Because the low back is not at issue in this appeal, we have not addressed that aspect of Employee's medical treatment.

Roberts recommended a lumbar MRI and also recommended a referral to an orthopedic surgeon for a hip evaluation, stating that Employee "does continue to complain of intermittent left lower extremity weakness which is most likely secondary to left hip injury/degenerative joint disease." Dr. Roberts also expressed the opinion in his report that "[i]t appears the patient had a pre-existing left degenerative hip, which was injured during a trauma on 8/14/2015."

Employee returned to Dr. Roberts on May 6, 2016 for follow-up after undergoing an MRI of his lumbar spine, reporting that his lumbar pain had improved. Based on the results of the MRI, Dr. Roberts concluded that Employee "does have facet arthritis which could've been aggravated during the injury." However, due to the improvement in Employee's lumbar symptoms, he did not recommend any further treatment of the lumbar spine, but again recommended Employee "continue with his orthopedic consult for a left hip." He noted the MRI "[did] not indicate any significant neural compression which could result in his left lower extremity weakness," and stated "[t]he left lower extremity symptoms are most likely related to the left hip injury and not the lumbar spine."

Employer authorized the recommended examination, and on May 24, 2016, Employee saw hip specialist Dr. Matthew Bernard. He noted that Employee complained of severe, intermittent left hip pain and observed that Employee had been "dealing with longstanding avascular necrosis since at least back in 2012." He stated that Employee "has been managing this and has been able to work." He observed that "[n]ew radiographs are available on our system, as well as an MRI . . . that was done back in October 2015 after the fall, that did show his advanced arthropathy, but it also showed the 10mm probable cartilaginous loose body in the anterior joint recess." He expressed a causation opinion, stating "I believe that this represents fractured osteophyte from his fall, based on our comparative films available on our system." Additional x-rays were obtained at Dr. Bernard's office on May 24, 2016, and he addressed them as follows:

> Severe arthrosis with loss of joint space. Positive osteophytes. Several broken osteophytes representing loose bodies within the joint, in the area of consistent osteonecrosis [present on] his prior films and today's films. Interval change from 2013 films to today's films are these osteochondral loose bodies within the joint space.

Dr. Bernard noted that the October 20, 2015 MRI revealed "[a]dvanced left hip arthropathy with marked cartilage loss, femoral head subluxation, subchondral cysts, mixed reactive acetabular bone changes, and marginal osteophytes"; "[m]oderate left hip effusion with 10mm probable cartilaginous loose body in the anterior joint recess"; "[d]iffuse labral degeneration without discrete tear"; and "[n]o acute bony abnormality, tendinopathy, or periarticular soft tissue injury." Ultimately, Dr. Bernard recommended that Employee undergo a left total hip replacement, stating that Employee "is no longer

able to ambulate to perform his duties, secondary to the hip pain and the catching from the loose bodies." He expressed the opinion that "arthroscopically removing the loose bodies is not the appropriate answer and that to take care of his entire problem and get him back to a functional manual labor type job will require total hip arthroplasty."

Two months later on July 27, 2016, and in apparent response to an inquiry from Employer's insurance carrier concerning the rationale for his opinion for the left total hip replacement, Dr. Bernard provided the following opinion:

> After review of all of [Employee's] films, as well as my office notes, my intent in that note was to convey the medical rationale for his need for a hip arthroplasty and not to imply that this was greater than 50% causally related to his fall at work. While the fall at work certainly was the proverbial straw that broke the camel's back, it is certainly evident radiographically that his avascular necrosis was long standing and would represent greater than 51% of the need for hip replacement. I do think there were interval changes prior to the fall and post-fall, including fractured osteophytes. This however is the natural course of pre-collapse to post-collapse avascular necrosis. In regards to the last statement in this letter, that it appears that [Employee] was already a candidate for a left total hip arthroplasty prior to the 08-14-2015 injury, I do agree that radiographically [Employee] was a candidate for this hip replacement prior to this [08-14-2015] event.

Employer denied authorization for the left hip replacement, asserting the work accident did not result in Employee's need for the surgery. The parties agreed to forego an evidentiary hearing and, after concluding no additional information was necessary, the trial court rendered a decision requiring Employer to provide ongoing treatment for the left hip. Specifically, the judge determined that "at a hearing on the merits, [Employee] will likely prevail in establishing that his need for left hip replacement surgery arose primarily out of and in the course and scope of employment." The trial court additionally denied Employee's request for temporary disability benefits. Both parties have appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2015). The trial court's decision may be reversed or modified if the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A)     Violate constitutional or statutory provisions;
(B)     Exceed the statutory authority of the workers' compensation judge;

4

(C)     Do not comply with lawful procedure;

(D)     Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion; or

(E)     Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015).

## Analysis

### *Employee's Appeal*

For his statement of the issues or basis for relief on appeal, Employee wrote on the notice of appeal that he was "threatened by employer to return from light duty to perform job that cause[d] injury." Employee has provided no other statement regarding any issues he attempts to raise on appeal, and he has provided no argument, brief, or position statement setting out how the trial court erred in deciding the case. As stated by the Tennessee Supreme Court, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Sneed v. Bd. of Prof'l Responsibility of the Supreme Court of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010). Indeed, were we to search the record for possible errors and raise issues and arguments for Employee, we would essentially be acting as his counsel, which the law clearly prohibits us from doing. Courts on appeal will not "dig through the record in an attempt to discover arguments or issues that [a party] may have made" because doing so "would place [the opposing party] in a distinct and likely insurmountable and unfair disadvantage." *Webb v. Sherrell*, No. E2013-02724-COA-R3-CV, 2015 Tenn. App. LEXIS 645, at *5 (Tenn. Ct. App. Aug. 12, 2015). Accordingly, we decline to conduct an "archaeological dig" into the record in an attempt to discover errors that might benefit either party. *McEarl v. City of Brownsville*, No. W2015-00077-COA-R3-CV, 2015 Tenn. App. LEXIS 894, at *7 (Tenn. Ct. App. Nov. 6, 2015). Here, it is unclear from Employee's comment on the notice of appeal how he contends the trial court erred in resolving the case, and we decline to speculate.

### *Employer's Appeal*

Employer raises a single issue on appeal questioning whether Employee's claim for medical benefits for his left hip injury should be denied based on Dr. Bernard's written statement that Employee's need for a left hip replacement "was more than 51% due to pre-existing avascular necrosis." For the reasons that follow, we agree with Employer that the medical proof to date is insufficient to show that Employee will likely prevail at a hearing on the merits in establishing that the work injury contributed more than 50% in causing the need for his left hip replacement. Accordingly, to the extent the trial court's order requires Employer to authorize and pay for a left total hip replacement,

5

the order is vacated. Employee is, however, entitled to ongoing medical treatment reasonably necessary as a result of the work-related left hip and low back injuries.

As our prior opinions have consistently stated, although an injured worker has the burden of proof on every essential element of his or her claim, at an expedited hearing an employee need not prove every element by a preponderance of the evidence, but must come forward with sufficient evidence from which the trial court can determine that the employee would likely prevail at a hearing on the merits consistent with Tennessee Code Annotated section 50-6-239(d)(1) (2015). *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). We have described the burden of proof at an expedited hearing as a lesser evidentiary standard that "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment . . ., but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

Tennessee Code Annotated section 50-6-102(14) (2015) defines "injury" as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or *the need for medical treatment*." (Emphasis added.) Furthermore, "[a]n injury causes death, disablement or the *need for medical treatment* only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or *need for medical treatment*, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (emphasis added).

In this case, Employee has failed to produce evidence suggesting that the work injury contributed more than 50% in causing the need for the total hip replacement surgery. Although Dr. Roberts expressed a causation opinion stating Employee's left hip complaints are "most likely secondary to the left hip injury/degenerative joint disease," and that Employee's hip was "injured during a trauma on 8/14/2015," he did not express an opinion as to the treatment reasonably necessary or recommended for the left hip injury or whether the injury contributed more than 50% in causing the need for such medical treatment. While Dr. Bernard's medical records reflect his opinion that the fall at work caused one or more osteophytes to break off and enter the "anterior joint space," there is no medical opinion suggesting that this work accident contributed more than 50% in causing the need for the recommended hip replacement. To the contrary, Dr. Bernard stated in response to Employer's inquiry that "[w]hile the fall at work certainly was the proverbial straw that broke the camel's back, it is certainly evident radiographically that his avascular necrosis was long standing and would represent greater than 51% of the need for hip replacement." There is no medical proof in the record contradicting Dr. Bernard's opinion or supporting the contention that the August 14, 2015 work injury

contributed more than 50% in causing the need for the left hip replacement as required by Tennessee Code Annotated section 50-6-102(14)(C).

Furthermore, there is no suggestion in the trial court's order that it disregarded Dr. Bernard's opinion or did not find the opinion to be credible. Instead, the trial court considered that, prior to Employee's work-related injury, he "had not received treatment for, nor been impaired from working at [Employer] by, left hip pain." The trial court considered Dr. Bernard's statement that Employee was a "candidate" for left hip replacement surgery before his fall "with the fact that the submitted evidence failed to establish that any physician had recommended treatment on [Employee's] left hip before he fell." In addition, the trial court observed that "after enduring left-hip pain for six months following his work-related fall, [Employee] is *not* now a candidate for hip surgery as he was before he fell, but, according to Dr. Bernard, is currently a surgical patient." (Emphasis added.) Although these observations and considerations are relevant to the issue at hand, the only medical opinion addressing the statutory requirement that an injury "contribute[] more than fifty percent (50%) in causing the . . . need for medical treatment" is Dr. Bernard's opinion that Employee's pre-existing avascular necrosis "would represent greater than 51% of the need for hip replacement." While Employee may ultimately succeed in presenting medical evidence sufficient to establish that his work injury contributed more than 50% in causing the need for the left hip replacement, the record does not contain such evidence at this stage of the proceedings. Although our review begins with the presumption that the trial court's conclusion that Employee would likely prevail at trial in establishing "his need for left hip replacement surgery arose primarily out of and in the course and scope of employment" is correct, the preponderance of the evidence in the record on appeal is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2016).

There is, however, no dispute that Employee fell at work and suffered injuries to his left hip and low back as a result of the incident. Thus, Employee remains entitled to medical treatment made reasonably necessary by and causally related to the work injury in accordance with Tennessee Code Annotated sections 50-6-204 and 50-6-102(14).

## Conclusion

For the foregoing reasons, we hold that the evidence preponderates against the trial court's determination that Employee will likely prevail at trial in establishing that the need for left hip replacement surgery arose primarily out of and in the course and scope of the employment. However, the preponderance of the evidence supports the conclusion that Employee is entitled to ongoing medical treatment made reasonably necessary by and causally related to the work injury. Accordingly, the trial court's order that Employee is entitled to medical benefits for treatment of his left hip and low back injuries is affirmed, as is the trial court's denial of temporary disability benefits. The trial court's finding that Employee will likely prevail in establishing that his need for left hip

7

replacement surgery arose primarily out of and in the course and scope of the employment is vacated and the case is remanded to the trial court for any further proceedings that may be necessary.

**FILED**

**February 9, 2017**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 8:00 A.M.**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Ceasar Gamble | ) | Docket No. 2016-01-0372 |
| | ) | |
| v. | ) | State File No. 63828-2015 |
| | ) | |
| Miller Industries, Inc., et al. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 9th day of February, 2017.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Ceasar Gamble | X | | | | | C/O 5131 Mimosa Circle, Chattanooga, TN 37416 |
| Eric Shen | | | | | X | Eric.shen@LibertyMutual.com |
| Thomas Wyatt, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |



Jeanette Baird
Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-0064
Electronic Mail: Jeanette.Baird@tn.gov