



FILED
Jun 14, 2022
02:22 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Emad Hanna | ) Docket No. 2019-06-2116 |
| | ) |
| v. | ) State File No. 21526-2019 |
| | ) |
| Gaylord Opryland d/b/a Marriott | ) |
| International, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Kenneth M. Switzer, Chief Judge | ) |

---

### Affirmed and Certified as Final

---

The employee alleged he sustained a compensable aggravation of a preexisting condition while working as a banquet server for the employer. Following an expedited hearing, the trial court denied the employee's request for benefits after concluding the employee had not presented sufficient proof such that the trial court could conclude he would likely prevail at a compensation hearing. That decision was not appealed, and the parties proceeded to trial. Following a compensation hearing, the trial court found that the employee had failed to meet his burden of proving by a preponderance of the evidence that his current condition or need for medical treatment were primarily caused by the employment. The employee has appealed. Having carefully reviewed the record, we affirm the trial court's decision and certify the trial court's order as final.

Judge Pele I. Godkin delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner joined.

Emad Hanna, Mt. Juliet, Tennessee, employee-appellant, pro se

Travis Ledgerwood, Nashville Tennessee, for the employer-appellee, Gaylord Opryland d/b/a Marriott International

### Factual and Procedural Background

On March 20, 2019, Emad Hanna ("Employee") was working as a banquet server for Gaylord Opryland d/b/a Marriott International ("Employer") when he described feeling tingling down his neck and into his right arm and fingers after scooping ice cream for

1

approximately one hour and thirty minutes. Employee reported his symptoms to Employer and was seen by an on-site nurse, who provided pain medication.

Two days later, on March 22, Employer provided a panel of physicians and Employee selected Dr. Robert Carver as his authorized treating physician. Employee was evaluated by Dr. Carver the same day and provided a history of "[right] arm pain and hand numbness after scooping ice cream for 2500 people." Employee described "right upper shoulder pain, tenderness and tingling radiating into the first two or three fingers," and Dr. Carver diagnosed Employee with right trapezius strain, subacromial bursitis of the right shoulder, and cervical spondylosis without myelopathy. Dr. Carver prescribed pain medication, referred Employee to physical therapy, and returned him to work without restrictions.

Employee was next seen by Dr. Carver on March 25 and reported no improvement. Medical records reflect Employee was concerned with "tingling" in his first two fingers and reported that his pain medication was not helping. Dr. Carver administered a subacromial bursa injection but stated that he "suspect[ed] that the majority of [Employee's] symptoms [were] due to muscle 'soreness' rather than an injury." He noted the subacromial injection was for subacromial bursitis, "possibly due to side sleeping, but there is the potential for a bursitis from his mechanism [of alleged injury]." On April 1, Employee returned to Dr. Carver and reported "having shock like pains for 3 days." In a follow-up appointment on April 3, he complained of right arm pain and stated he "had 0% improvement and that his arm is now worse." Employee reported experiencing a "shocking sensation from his shoulder to his fingertips" every 15 minutes that lasted 30 to 35 seconds. Dr. Carver noted that Employee's "[t]rapezius soreness that persists beyond 2 weeks/6 therapy visits is more likely related to the cervical spondylitic change than to scooping ice cream for over an hour." Dr. Carver advised Employee to complete his final therapy sessions and planned to release him at the next office visit.

Employee was next seen by Dr. Carver on April 11 and stated he was the "same" since his injury. Dr. Carver noted Employee had completed six therapy visits, and therapy notes indicated his rehab potential was "poor." Dr. Carver "[r]ediscussed etiology and relation to chronic condition (spondylosis) not work injury" and opined Employee had reached maximum medical improvement. He released Employee from care, returned him to full duty work, and recommended he seek further medical care with a primary care physician for evaluation and treatment of his spondylosis and radiculopathy of his neck.

Following his release, Employee sought treatment on his own with Dr. Amir Abtahi at Vanderbilt University Medical Center, who obtained objective studies that revealed cervical degenerative changes.[1] Dr. Abtahi provided conservative treatment, and on

---

[1] Employer requested that Dr. Carver review Dr. Abtahi's medical records and provide a causation opinion in September 2019. That opinion is not contained in the record on appeal, but the trial court's order

2

October 8, 2019, Employee reported no pain in the upper extremity but complained of continued numbness. Dr. Abtahi made no additional recommendations and advised Employee that he could follow up on an as-needed basis.

On October 30, 2019, Employee filed a petition for benefit determination. Subsequently, during a status conference, Employer agreed to provide a panel of orthopedic physicians from which Employee selected Dr. Sean Kaminsky. In June 2020, Dr. Kaminsky evaluated Employee, obtained x-rays of his cervical spine, and completed a Standard Form Medical Report for Industrial Injuries ("Form C-32") on June 26, 2021. On the Form C-32, Dr. Kaminsky opined that he did not find any work-related aggravation of a preexisting condition, that Employee sustained no permanent impairment caused by a work injury, and that Employee's cervical condition and need for medical treatment did not arise primarily from his employment.

In September 2020, Employee returned to Dr. Abtahi with complaints of thumb numbness. Dr. Abtahi placed him at maximum medical improvement with no permanent impairment or restrictions. Thereafter, an expedited hearing was held to determine if Employee was entitled to receive additional medical treatment for his alleged work-related injuries. On October 15, 2020, the trial court denied Employee's request and concluded that Employee was unlikely to prove at a compensation hearing that his neck condition was work-related. That order was not appealed.

In May 2021, Dr. Abtahi completed a Form C-32, and in October 2021, Employer deposed him.[2] During his deposition, Dr. Abtahi testified that Employee had aggravated a preexisting condition and that his "symptoms began after this incident at work while scooping ice cream." He stated that this "represented an exacerbation of an underlying condition, and the exacerbation is what required treatment." Dr. Abtahi opined this was a "temporary aggravation" and confirmed Employee had no anatomical change or permanent advancement of his cervical spine condition as a result of the March 20, 2019 work incident. When questioned, Dr. Abtahi agreed that any future medical treatment Employee may need for his cervical spine would be primarily due to his preexisting degenerative conditions and not the March 20 incident. Dr. Abtahi was also asked about Dr. Kaminsky's opinion in the following exchange:

> Q: Doctor, Dr. Sean Kaminsky has evaluated [Employee]. And he provided us with an opinion which stated that the degenerative changes in the cervical spine pre-dated the ice cream incident at work,

___

indicates that Dr. Carver concluded Employee had cervical spondylosis, and he noted that an MRI revealed "chronic degenerative changes." The court's order further reflects that, when asked whether Employee's diagnoses and need for medical treatment arose primarily out of the reported work injury, Dr. Carver indicated they did not.

[2] Dr. Abtahi recommended that Employee obtain an FCE in the Form C-32, but this was never done.

3

and he found there was no permanent aggravation of the pre-existing condition.

Do you agree with Dr. Kaminsky's opinion on this matter?

A:     Yes.

In addition, Dr. Abtahi testified that Employee's thumb numbness stemmed from Employee's "degenerative chronic cervical spine condition" and that, although it was exacerbated by Employee's work incident, "the primary underlying pathology is, in fact, the underlying degenerative changes."

After a March 1, 2022 trial, the court issued a written order in which it concluded Employee provided no medical evidence that his current condition arose primarily out of his employment or that he suffered a permanent impairment due to the work incident. Because Employee failed to show by a preponderance of the evidence that he suffered a compensable permanent disability as a result of his work-related injury, his claim for additional benefits, including permanent disability benefits and medical benefits, was denied. Employee has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2021). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2021).

## Analysis

In his notice of appeal, Employee contends, in part, that he "hope[s] to achieve justice" after he "lost a sense at two finger[s] from three years ago . . . [and] I want the court to present me to a medical expert to prove my case." As an initial matter, we note

that Employee is self-represented in this appeal, as he was in the trial court. Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000). However, as explained by the Court of Appeals,

> courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe. . . . Pro se litigants should not be permitted to shift the burden of the litigation to the courts or to their adversaries.

*Hessmer v. Hessmer*, 138 S.W.3d 901, 903-04 (Tenn. Ct. App. 2003) (citations omitted).

Employee has not filed a brief on appeal and has not identified any appealable issues or explained how he believes the trial court erred in its rulings. Although Employee sent the Appeals Board Clerk a brief email in support of his appeal, we are unable to discern any factual or legal issues for review in this correspondence. As stated by the Tennessee Supreme Court, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Sneed v. Bd. of Prof'l Responsibility of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010). Indeed, were we to search the record for possible errors and raise issues and arguments for Employee, we would be acting as his counsel, which the law clearly prohibits. *Webb v. Sherrell*, No. E2013-02724-COA-R3-CV, 2015 Tenn. App. LEXIS 645, at *5 (Tenn. Ct. App. Aug. 12, 2015). As mandated by Tennessee Code Annotated section 50-6-239(c)(7), we must presume the trial court's factual findings are correct, unless the preponderance of the evidence is otherwise.

Here, the trial court noted that Employee was a "forthright and credible witness." The court further found that Employee experienced symptoms in his neck, right arm, and fingers while working for Employer but explained that work-relatedness was "the threshold issue." In considering expert medical opinions, the trial court first noted that Dr. Kaminsky, who was authorized by Employer, saw Employee only once but opined that his condition and need for medical treatment did not arise primarily out of his employment.[3] In contrast, Dr. Abtahi followed Employee over the course of six months and saw him four times. The court placed greater weight on the opinion of Dr. Abtahi, who testified that scooping ice cream aggravated Employee's underlying condition; however, the court noted that Dr. Abtahi testified that Employee's aggravation was temporary and resulted in no anatomical change. As a result, the court concluded that neither physician's opinion supported the additional relief sought by Employee.[4] We agree.

---

[3] The trial court noted that, because he was selected from a panel, Dr. Kaminsky's causation opinion was presumed correct. *See* Tenn. Code Ann. § 50-6-102(14)(E).

[4] Employee offered no admissible proof of unpaid medical expenses causally related to the work incident.

Finally, Employer contends Employee's appeal is frivolous and requests costs and/or attorneys' fees. Specifically, Employer asserts, in part, that Employee "failed to file a trial brief or any documentation indicating his specific issue or issues" with the trial court's ruling and that his appeal is "clearly devoid of merit." Further, Employee "formulated no arguments stating his basis for the appeal." A frivolous appeal is one that is devoid of merit or brought solely for delay. *Yarbrough v. Protective Servs. Co., Inc.*, No. 2015-08-0574, 2016 TN Wrk. Comp. App. Bd. LEXIS 3, at *11 (Tenn. Workers' Comp. App. Bd. Jan. 25, 2016). Litigants "should not be required to endure the hassle and expense of baseless litigation. Nor should appellate courts be required to waste time and resources on appeals that have no realistic chance of success." *Id.* at *10-11 (citations omitted). We conclude Employee's appeal is devoid of merit and is frivolous. However, we exercise our discretion not to award attorneys' fees or other expenses for Employee's frivolous appeal. *See* Tenn. Comp. R. & Regs. 0800-02-22-.09(4) (2020).

**Conclusion**

For the foregoing reasons, we affirm the decision of the trial court and certify it as final. Costs on appeal are taxed to Employee.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Emad Hanna | ) | Docket No. 2019-06-2116 |
| | ) | |
| v. | ) | State File No. 21526-2019 |
| | ) | |
| Gaylord Opryland d/b/a Marriott | ) | |
| International, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Kenneth M. Switzer, Chief Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 14th day of June, 2022.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Emad Hanna | | | | X | taimour2008@yahoo.com |
| Travis Ledgerwood | | | | X | tledgerwood@morganakins.com plunny@morganakins.com |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

*O. Yearwood*

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov