IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 17, 2022 Session

## DEBORAH LACY v. MEHARRY GENERAL HOSPITAL ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 16C1053    William B. Acree, Senior Judge**

_____

### No. M2021-00632-COA-R3-CV

_____

Plaintiff Deborah Lacy brought this action against Dr. Nagendra Ramanna, alleging that he committed a battery upon her by shaking her hand too forcefully during a visit in which Plaintiff was seeking medical treatment for an alleged heart condition. Following discovery, Defendant moved for summary judgment, which the trial court granted after finding no evidence that the handshake caused injury to Plaintiff's right hand. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Deborah Lacy, Madison, Tennessee, appellant, _pro se._

Sara F. Reynolds and Ashley B. Tipton, Nashville, Tennessee, for the appellee, Nagendra Ramanna.

## OPINION

### I. BACKGROUND

This is Plaintiff's second appeal of this action. In the first appeal, _Lacy v. Meharry Gen'l Hosp._, No. M2016–01477–COA–R3–CV, 2017 WL 6501915, at *1 (Tenn. Ct. App. Dec. 19, 2017) ("_Lacy_ I"), this Court provided the following factual background, in pertinent part:

> On April 14, 2016, Ms. Lacy filed a complaint against Dr. Ramanna in the Circuit Court for Davidson County, Tennessee. . . . [T]he complaint alleged that Ms. Lacy made an appointment with Dr. Ramanna, a cardiologist, "to

check why she was getting so out of breath while doing her daily chores since February 11, 2015." According to the complaint, "upon entering the room . . . Plaintiff extended her right hand for the [*sic*] Dr. Nagendra Ramanna to shake her hand and this is when he squeezed Plaintiff [*sic*] fingers to [*sic*] hard." Ms. Lacy generally described this interaction as "a beating" or "assault." As a result, Ms. Lacy complained that her "hand is in constant pain" and "the fingers no longer have any strength."

In *Lacy* I, we affirmed the dismissal of all of Plaintiff's claims but the battery action against Dr. Ramanna, finding that "[w]hile further evidence may demonstrate otherwise, at this stage of the proceedings, we cannot conclude that the [Health Care Liability] Act applies to Ms. Lacy's handshake claim" to bar her action for failure to comply with the statutory procedural requirements for a health care liability claim. 2017 WL 6501915, at *4.

Following the remand to the trial court from *Lacy* I, Defendant filed a motion for summary judgment, arguing that "(a) Dr. Ramanna did not unreasonably squeeze Plaintiff's hand or fingers during the July 15 handshake; (b) Plaintiff did not suffer any injury because of the handshake; and (c) Plaintiff consented to the handshake, precluding any cause of action for battery." In support of the motion, Defendant filed affidavits from himself, his assistant whom Plaintiff alleged witnessed the handshake, and Dr. Douglas R. Weikert, an orthopaedic surgeon who testified among other things that there is no objective evidence of injury to Plaintiff's right hand, and "no action or omission on the part of Dr. Ramanna caused Ms. Lacy any injury which would not otherwise have occurred."

Defendant also filed excerpts from Plaintiff's deposition, in which she admitted that (1) she did not tell Defendant he was hurting her hand either during or after the handshake; (2) she did not tell anyone else at the clinic that day of her alleged injury; and (3) she did not seek any medical treatment for the alleged injury until two years later. Plaintiff also discussed in her deposition her prior claims that numerous other individuals had assaulted and "beaten" her right hand before the handshake with Dr. Ramanna in 2015.

Defendant also filed a statement of material facts as to which he contended there was no genuine issue for trial, as required by Tenn. R. Civ. P. 56.03. Plaintiff responded with numerous filings, roughly 168 pages long, all of which but a few were handwritten. Defendant filed a reply. Plaintiff responded by filing a "notice of filing a flash drive," stating only that "[t]he Response Reply Motion to the Summary Judgment Motion filed April 21, 2021. With Exhibits." Plaintiff's sur-reply consisted of various documents totaling 320 pages on a USB flash drive filed with the trial court. The trial court granted Defendant summary judgment in an order stating, "the Court finds that there is no credible evidence that the Defendant committed a battery upon the Plaintiff, and there is no evidence that the handshake injured the Plaintiff."

2

## II. ISSUES

The issues as framed and presented by Plaintiff are difficult to render comprehensible. Quoted verbatim, they state as follows:

1. Whether the Trial Court erred in Granting the Appellees Ramanna's Motion for Summary and Reply Summary Judgment Motion, without including the Appellants Response to the Appellee's Reply Summary Judgment Motion. Tenn. Civil Rule 27(c). The Appellants entire Response to the Appellee's Reply Summary Judgment Motion is in a Brown envelope Vol. 1 of 1 on a flash Drive.

2. Whether the Trial Court erred in Granting the Appellees Motion for Summary Judgment and Reply Summary Judgment Motion when the Appellant was not properly included in the discovery process, by allowing the Appellant proof of the Appellee, fake hand x-ray and Medical Records to just go away.
a. Doctor Appellant has never been a patient of before
b. Hand x-rays with Warning signs that had been clearly altered.
c. Taking one part of the Appellant medical Records and leaving the other part.
d. Clearly changing the numbers on the Appellants Medical records to take the records out of order.

3. Whether the Trial Court erred in Granting the Appellee Ramanna Motion for Summary Judgment and the Reply Summary Judgment. Filing Irrelevant inadmissible Evidence for the, Tenn. Rule 56, 26.02, 404.

We construe the primary issue presented to be whether the trial court properly granted Defendant summary judgment. Plaintiff also appears to argue that the trial court erred by not considering her sur-reply to Defendant's reply to her response to the motion for summary judgment, and by accepting the authenticity of some of Plaintiff's medical records and x-ray images proffered by Defendant.

## III. STANDARD OF REVIEW

A trial court may grant summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The propriety of a trial court's summary judgment decision presents a question of law, which we review de novo with no presumption of correctness. *Kershaw v. Levy*, 583 S.W.3d 544, 547 (Tenn. 2019).

"The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 83 (Tenn. 2008). As our Supreme Court has instructed,

> when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense.

*Rye v. Women's Care Ctr. of Memphis*, 477 S.W.3d 235, 264 (Tenn. 2015). "[I]f the moving party bears the burden of proof on the challenged claim at trial, that party must produce at the summary judgment stage evidence that, if uncontroverted at trial, would entitle it to a directed verdict." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 888 (Tenn. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

When a party files and properly supports a motion for summary judgment as provided in Rule 56, "to survive summary judgment, the nonmoving party may not rest upon the mere allegations or denials of its pleading, but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, set forth specific facts . . . showing that there is a genuine issue for trial." *Rye*, 477 S.W.3d at 265 (internal quotation marks and brackets in original omitted). "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects,* 578 S.W.3d at 889 (quoting *Rye*, 477 S.W.3d at 265).

In reviewing the trial court's summary judgment decision, we accept the evidence presented by the nonmoving party (in this case, Plaintiff) as true; allow all reasonable inferences in her favor; and "resolve any doubts about the existence of a genuine issue of material fact in favor of" Plaintiff, the party opposing summary judgment. *Id.* at 887.

## IV. ANALYSIS

### A. Compliance with Tenn. R. App. P. 27

As an initial matter, Defendant argues that "Plaintiff's failure to submit any intelligible argument results in waiver of all issues presented on appeal" and requests that the appeal be dismissed for noncompliance with Tenn. R. App. P. 27 and Tenn. Ct. App.

4

R. 6. In *Lacy v. Vanderbilt Univ. Med. Ctr.*, M2018-00832-COA-R3-CV, 2019 WL 1450390, at \*3, \*4 (Tenn. Ct. App. Apr. 1, 2019), this Court took a similar approach, stating:

> Ms. Lacy raises several issues for review. However, her statement of the issues is rambling and largely incoherent. Because Ms. Lacy's brief fails to comport with the requirements of the Tennessee Rules of Appellate Procedure, we do not reach her substantive issues.
>
> \*       \*       \*
>
> Ms. Lacy's brief is largely incoherent as she neither develops her arguments nor cites authority to support her positions. . . .
>
> Ms. Lacy has extensive experience with this Court as she has filed no fewer than eleven (11) appeals since November 2015.[1] In two prior appeals, this Court warned Appellant that she is required to comply with Tenn. R. App. P. 27 but then proceeded to address the case on the merits despite the procedural shortcomings in her brief. *See Lacy v. HCA Tristar Hendersonville Hosp.*, 2018 WL 575346 at \*5-6 (Tenn. Ct. App. Jan. 26, 2018); *Lacy v. Hallmark Volkswagen*, 2017 WL 2929502 at \*1-3 (Tenn. Ct. App. July 10, 2017). Even after repeated warnings, Ms. Lacy still refuses to abide by the Tennessee Rules of Appellate Procedure. Due to our inability to reach the substantive issues, given the deficiencies in Ms. Lacy's brief after repeated warnings, Ms. Lacy's appeal is dismissed.

(Footnote in original). In the present case, in contrast to some of her many prior appeals in other actions, Plaintiff's appellate brief contains all the basic elements required by Tenn. R. App. P. 27, including a table of contents, table of authorities, and statements of the

---

[1] *See Lacy v. HCA Tristar Hendersonville Hosp.*, No. M2017-01055-COA-R3-CV, 2018 WL 575346 (Tenn. Ct. App. Jan. 26, 2018) (no perm. app. filed); *Lacy v. Meharry Gen. Hosp.*, No. M2016-01477-COA-R3-CV, 2017 WL 6501915 (Tenn. Ct. App. December 19, 2017) (no perm. app. filed); *Lacy v. Hallmark Volkswagen Inc. of Rivergate*, No. M2016-02366-COA-R3-CV, 2017 WL 2929502 (Tenn. Ct. App. July 10, 2017) (no perm. app. filed); *Lacy v. HCA Health Serv. of TN, Inc.*, No. M2016-01027-COA-R3-CV, 2017 WL 1944351 (Tenn. Ct. App. May 10, 2017), *perm. app. denied* (Aug. 17, 2017); *Lacy v. Saint Thomas Hosp. W., et al.*, No. M2016-01272-COA-R3-CV, 2017 WL 1827021 (Tenn. Ct. App. May 4, 2017), *perm. app. denied* (May 4, 2017); *Lacy v. Vanderbilt Univ. Med. Ctr.*, No. M2016-02014-COA-R3-CV, 2017 WL 6273316 (Tenn. Ct. App. May 4, 2017) (no perm. app. filed); *Lacy v. Mitchell*, 541 S.W.3d 55 (Tenn. Ct. App. Nov. 30, 2016); *Lacy v. HCA Tristar Hendersonville Hosp.*, No. M2015-02217-COA-R3-CV, 2016 WL 4497953 (Tenn. Ct. App. Aug. 25, 2016), appeal after remand. Additionally, Ms. Lacy has three cases still pending in this Court. *See Lacy v. Vanderbilt Univ. Med. Ctr.*, No. M2018-00832-COA-R3-CV; *Lacy v. Saint Thomas Hosp. W.*, No. M2018-01758-COA-R3-CV; *Lacy v. Big Lots Stores, Inc.*, M2019-00419-COA-R3-CV.

issues, the case, and the facts, with some citations to the record and reference to legal authorities, and an argument section. Much of it is rambling, incoherent, and difficult to understand; but in our discretion, we do not think it is so deficient as to warrant the harsh sanction of dismissal of her appeal without consideration of its merits. However, we conduct our review mindful of the admonition to Plaintiff in *Lacy v. Vanderbilt*, wherein we stated:

> Rule 6 of the Tennessee Rules of the Court of Appeals requires an appellate brief to contain a written argument in regard to each issue on appeal, with a statement of the alleged erroneous action of the trial court, as well as a specific reference to the record where such action is recorded. The Rule further provides:
>
>> No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.
>
> Tenn. R. Ct. App. 6(b).
>
> *      *      *
>
> "[T]his Court is not charged with the responsibility of scouring the appellate record for any reversible error the trial court may have committed." [*Owen v. Long Tire, LLC*, No. W2011-01227-COA-R3-CV, 2011 WL 6777014, at *4 (Tenn. Ct. App. Dec. 22, 2011)]. "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010).

2019 WL 1450390, at *2, *3 (quoting *Clayton v. Herron*, No. M2014-01497-COA-R3-CV, 2015 WL 757240, at *2-3 (Tenn. Ct. App. Feb. 20, 2015)).

### B. Plaintiff's Sur-reply in Opposition to Summary Judgment

Plaintiff appears to argue that the trial court erred by refusing to consider her sur-reply to Defendant's reply to her response to the motion for summary judgment. Tennessee Rule of Civil Procedure 56.03 provides for the following summary judgment procedure:

In order to assist the Court in ascertaining whether there are any material facts in dispute, any motion for summary judgment made pursuant to Rule 56 of the Tennessee Rules of Civil Procedure shall be accompanied by a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be set forth in a separate, numbered paragraph. Each fact shall be supported by a specific citation to the record.

Any party opposing the motion for summary judgment must, not later than five days before the hearing, serve and file a response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record. Such response shall be filed with the papers in opposition to the motion for summary judgment.

In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute.

If the non-moving party has asserted additional facts, the moving party shall be allowed to respond to these additional facts by filing a reply statement in the same manner and form as specified above.

Rule 56 does not anticipate or provide for a sur-reply in support of or opposition to summary judgment. Consequently, we believe it was within the trial court's discretion to determine how to deal with Plaintiff's pleading. *See generally Demquarter Healthcare Invs., L.P. v. OP Chattanooga, LLC*, No. E2016–00031–COA–R3–CV, 2016 WL 7479143, at *6 (Tenn. Ct. App. Dec. 29, 2016) ("We find no abuse of discretion in the trial court's decision to allow the defendants' new arguments raised in their 'surreply' brief and to rely on those arguments in denying the motion for summary judgment").

In the present case, as Defendant argues, there is no indication in the record that the trial court declined to consider Plaintiff's sur-reply in ruling on the summary judgment motion. Defendant did not object to it. The trial court entered no order stating it denied consideration of the sur-reply. The final judgment states that the court grants summary judgment "[a]fter listening to oral arguments and reviewing the Defendant's Motion, the Plaintiff's Response, *and the record as a whole*." (Emphasis added).

7

Moreover, Plaintiff points to nothing in the 320-page sur-reply that creates a genuine issue of material fact on the dispositive question of causation of any alleged injury. It consists primarily of copies of handwritten pleadings filed by Plaintiff in her many other lawsuits. There are some medical records, many of which involve alleged injuries to parts of her body other than her right hand. Some of the documents in the voluminous sur-reply are duplicative of filings that were already in the record. We find no error in the trial court's handling of Plaintiff's sur-reply.

## C. Authenticity and Admissibility of Medical Records

Throughout her brief, Plaintiff repeatedly refers to "fake medical records," "fake x-rays," and "fake doctors" in reference to certain of her own medical records that were provided to her and filed with the trial court in support of Defendant's assertions. However, the records were filed with the affidavits of records custodians from three health care providers, stating that (1) the copies of the records were "true and correct cop[ies] of each and every record and tangible thing maintained by" the providers pertaining to Plaintiff; (2) that "the records and tangible items . . . were created at or near the time of the events recorded in those documents/tangible things by, or from information transmitted by, a person with knowledge of and a business duty to record or transmit those matters," and (3) the records "were created, kept and maintained in the ordinary course of regularly conducted activity at the offices of [the health care providers] as a regular business practice." *See* Tenn. R. Evid. 902(11) (setting forth requirements for self-authentication of certified records of a regularly conducted activity). It thus appears that the records were properly authenticated. "Both the rules of evidence and the common law designate the trial court as the 'arbiter of authentication issues,' and, accordingly, that court's ruling will not be disturbed absent a showing that the court clearly abused its discretion." *State v. Miller*, No. M2019-00214-CCA-R3-CD, 2020 WL 526094, at *6 (Tenn. Crim. App. Feb. 3, 2020). Plaintiff provided no proof to support her belief that the medical records were "fake." This issue is without merit.

## D. Summary Judgment: Causation of Alleged Injury

As we have recently reiterated, "[t]his Court has defined the tort of battery as 'an intentional act that causes an unpermitted, harmful or offensive bodily contact.'" *Spearman v. Shelby Cnty. Bd. of Ed.*, 637 S.W.3d 719, 734 (Tenn. Ct. App. 2021) (quoting *Lacy v. Hallmark Volkswagen Inc. of Rivergate*, No. M2016-02366-COA-R3-CV, 2017 WL 2929502, at *4 (Tenn. Ct. App. July 10, 2017)). "Therefore, Ms. Lacy must show that the Defendant[] intentionally committed an act that resulted in a harmful or offensive contact. Contact constitutes 'offensive contact' if it 'infringes on a reasonable sense of personal dignity ordinarily respected in a civilized society.'" *Lacy v. Hallmark Volkswagen*, 2017 WL 2929502, at *4 (quoting *Doe v. Mama Taori's Premium Pizza, LLC*, No. M1998–00992–COA–R9–CV, 2001 WL 327906, at *4 (Tenn. Ct. App. Apr. 5, 2001)).

Defendant makes several arguments as to why the trial court correctly granted him summary judgment. He asserts that Plaintiff's claim of battery was negated by her consent to shake hands with him. Plaintiff's allegations regarding who initiated the handshake are inconsistent and contradictory. In her complaint, she alleged that "upon entering the [examination] room is when Plaintiff extended her right hand for the Dr. Nagendra Ramanna to shake her hand and this is when he squeezed Plaintiff fingers to[o] hard." In Plaintiff's deposition, she testified that Defendant "reached his hand out and I grabbed it to shake it." Regardless of who initiated the handshake, the trial court did not base its ruling on consent, and neither do we. This is because a person may consent to shaking hands with someone and still not consent to the other person using such excessive force as to cause a hand injury.

Defendant also argues that the trial court correctly held that he presented evidence that negated the elements of injury and causation of her battery claim. He points to Plaintiff's deposition testimony where she stated as follows:

Q. So you don't remember if all -- if he squeezed all of your hand?
A. No, he shook my hand so I'm sure he -- no, I didn't -- no, he -- he squeezed all my fingers, but the most affected was the two middle fingers. I mean all of them were affected but the two middle fingers were the most affected.
Q. When you say "middle fingers," you're talking about the middle finger and your ring finger?
A. Yes.
Q. Did you say anything to him during the handshake?
A. No.
Q. Did you ever tell him, "You're hurting my hand. Please stop"?
A. I jerked my hand. Jerked my hand.
Q. So during the handshake, you jerked --
A. Not --
Q. -- your hand back?
A. Not forcefully because he -- I just kind of like pulled it back when he started squeezing it. But he had it so tight I couldn't just yank it out, because he had it.
Q. Did you ever tell him that he was --
A. No.
Q. -- hurting your hand?
A. No, why? He knew.
Q. After you pulled your hand back, what happened?
A. I let him talk to me. Because he was not first one to assault me. All the doctors and nurses do it.

\*      \*      \*

9

Q. So you never mentioned that his hand – handshake hurt your hand to Dr. Ramanna until you filed the lawsuit?
A. Right.

*     *     *

Q. Did you ever tell the nurse that was in the room that Dr. Ramanna hurt your hand?
A. No.
Q. Did you tell anyone that he hurt your hand before you left the clinic that day?
A. No.

Defendant submitted his affidavit in which he testified as follows in pertinent part:

I do not shake every patient's hand. When I do shake a patient's hand, I only do so if the patient extends his or her hand to initiate or accept the handshake.

I did not squeeze or shake Ms. Lacy's hand or fingers in a hard, unreasonable, or abnormal manner. Instead, I shook Ms. Lacy's hand in a gentle and courteous manner as that is my habit and practice when I shake anyone's hand. Furthermore, I have never squeezed a patient's hand or fingers in a hard, unreasonable, or abnormal manner.

I would remember if a patient, colleague, or acquaintance stated or otherwise indicated that my handshake was painful. I do not remember a patient, colleague, or acquaintance ever stating or otherwise indicating that my handshake was painful. I do not remember a patient, colleague, or acquaintance ever asking me to stop shaking his or her hand.

I would remember if I witnessed a patient, colleague, or acquaintance wincing, flinching, recoiling, or grimacing when shaking my hand. I do not remember a patient, colleague, or acquaintance ever[] wincing, flinching, recoiling, or grimacing when shaking my hand.

Ms. Lacy never complained to me about the handshake. The first time I learned that Ms. Lacy was claiming she was injured from shaking my hand was when she filed her lawsuit.

In shaking Ms. Lacy's hand, I never intended to threaten, harm, frighten, or offend Ms. Lacy. My intention in shaking Ms. Lacy's hand was to greet her in a professional and courteous manner.

10

During the appointment, I never threatened any harmful or offensive contact with Ms. Lacy.

(Numbering in original omitted). Defendant's medical assistant, Quistina Ursery-McMillan, whom Plaintiff alleged was in the room during the handshake, testified by affidavit that she did "not remember a patient ever stating or otherwise indicating that Dr. Ramanna's handshake was painful [or] asking Dr. Ramanna to stop shaking his or her hand." She said, "I would remember if I witnessed a patient wincing, flinching, recoiling, or grimacing when shaking Dr. Ramanna's hand."

In support of his summary judgment motion, Defendant filed the affidavit of Douglas R. Weikert, M.D., who testified:

I practice in the specialty of orthopaedic surgery in Nashville, Tennessee. I have been continuously licensed and practicing medicine in Tennessee since 1993. I am board certified in orthopaedic surgery with a certificate of added qualification in hand surgery. . . . I make this affidavit based on my personal knowledge, education, and experience as well as my review of numerous materials related to this action, including pleadings, medical records, radiology studies, depositions, and other documents.

Ms. Lacy suffered no injury to her right hand or fingers as a result of any handshake with Dr. Ramanna. No action or omission on the part of Dr. Ramanna caused Ms. Lacy any injury which would not otherwise have occurred.

It is my understanding that Ms. Lacy claims Dr. Ramanna squeezed her right hand and fingers so hard during a July 15, 2015 handshake that it "crushed" her middle and ring fingers and left her with functional limitations and permanent injury. If Ms. Lacy had suffered such injuries, evidence of the damage would be visible on a radiology study of Ms. Lacy's right hand.

A 2017 radiology study of Ms. Lacy's right hand shows no evidence of any traumatic or other injury to her right hand or fingers. Ms. Lacy's medical records also contain a 2014 radiology study of her right hand. Between the 2014 and 2017 radiology studies, there is no objective change in the bony anatomy of Ms. Lacy's right hand or fingers because of any acute or chronic trauma. In other words, there are no anatomical differences in Plaintiff's right hand or fingers in the 2014 and 2017 radiology studies.

Had Ms. Lacy suffered the injuries alleged, she would have needed to seek medical care and treatment. Ms. Lacy, however, did not seek any medical

care or treatment for her right hand or fingers until October 2017 when she allegedly injured her right hand in a car accident. The fact that Ms. Lacy did not seek any medical care or treatment until after the October 2017 car accident further supports my medical opinion that Ms. Lacy's hand or fingers were not injured during the handshake with Dr. Ramanna.

(Numbering and footnote in original omitted).

Defendant also submitted a copy of a medical intake questionnaire that Plaintiff filled out two days after her alleged handshake injury during another unrelated medical appointment, wherein Plaintiff answered "no" to the question "Have you been hit, kicked, punched, [or] otherwise hurt by someone in the past year?" Moreover, Plaintiff herself testified as follows:

Q. Did you ever seek medical treatment for your hand based on this handshake?
A. I finally did.
Q. And when did you seek that treatment?
A. 2017 -- two years later. I'll be honest, I was afraid to go anywhere.

\* \* \*

Q. Was [that] the first time that you sought treatment?
A. Yes, yes.

\* \* \*

Q. So immediately after the handshake, can you describe the pain that you felt in your fingers?
A. Just felt like crushed bones, like it was being crushed. That's all. . . .
Q. But you didn't go and seek any treatment to see if, you know, your fingers had been broken or anything? You didn't seek any medical treatment regarding your hand until 2017 -- your fingers? Sorry.
A. Not right after, no.
Q. And it was 2017 when you went?
A. You know, the car wreck was in October of 2017 so it could have been possibly early January.
Q. Of 2018?
A. Yeah, could have been.

Considering the above-quoted evidence in the light most favorable to Plaintiff, even assuming for argument's sake that Plaintiff suffered a hand injury—which is frankly a big

12

stretch, but one warranted by a faithful application of the summary judgment standard–Defendant successfully negated the element of causation. In the face of Defendant's expert medical testimony, Plaintiff produced no proof, by expert medical testimony, or otherwise, that any injury she might have suffered was caused by Defendant's handshake. No reasonable trier of fact could conclude that Dr. Ramanna caused any hand injury to Ms. Lacy. The trial court therefore correctly granted Defendant summary judgment.

In the argument section of his brief, Defendant argues that this is a frivolous appeal and requests an award of his attorney's fees on appeal. However, "[a] request for attorney fees is waived if not included in the statement of issues." *Sexton v. Carden*, No. E2019-01057-COA-R3-CV, 2020 WL 7240297, at *5 (Tenn. Ct. App. Dec. 9, 2020) (citing *Keeble v. Keeble*, No. E2019-01168-COA-R3-CV, 2020 WL 2897277, at *4 (Tenn. Ct. App. June 3, 2020)). Because Defendant did not raise attorney's fees in his statement of the issues, we deem this issue to have been waived.

## V. CONCLUSION

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, Deborah Lacy, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE

13