IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 9, 2025

## FRED BEAL v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 11-07745      Chris Craft, Judge
_____

### No. W2024-01302-CCA-R3-PC
_____

Petitioner, Fred Beal, was convicted of first degree premeditated murder, felony murder, attempted first degree murder, two counts of attempted especially aggravated robbery, and employing a firearm during the commission of a dangerous felony, for which he received an effective sentence of life imprisonment plus twenty-two years. This court affirmed Petitioner's convictions on direct appeal. Petitioner then filed a petition for post-conviction relief in which he claimed ineffective assistance of counsel, and the post-conviction court denied the petition after a hearing. In this appeal, Petitioner asserts that trial counsel was ineffective for failing to properly investigate a witness and to properly communicate with Petitioner, and that cumulative error prejudiced Petitioner. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and JOHN W. CAMPBELL, SR., JJ., joined.

Ernest J. Beasley, Memphis, Tennessee, for the appellant, Fred Beal.

Jonathan Skrmetti, Attorney General and Reporter; Ryan Dugan, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Scott Bearup, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts and Procedural History**

A. Trial

In July 2011, Petitioner and co-defendant, Brandon Holmes, devised a plan to rob Travis Metcalf. *State v. Beal*, No. W2016-00905-CCA-R3-CD, 2017 WL 2817660, at *1-3 (Tenn. Crim. App. June 29, 2017), *perm. app. denied* (Tenn. Apr. 11, 2017). On July 19, Petitioner and co-defendant Holmes, both armed with firearms, attempted to carry out their plan; however, it immediately went awry. *Id.* During the course of the attempted robbery, Petitioner and co-defendant Holmes shot a total of seven or eight shots, striking Mr. Metcalf and killing Amelia Campbell. *Id.* A Shelby County grand jury indicted Petitioner for first degree murder, felony murder, two counts of attempted especially aggravated robbery, attempted first degree murder, and employing a firearm during the commission of a felony. Petitioner proceeded to trial in February 2016, the facts of which were summarized by this court in Petitioner's direct appeal. *See id.* at *1-5.

A Shelby County jury found Petitioner guilty on all counts. *Id.* at *5. On direct appeal, Petitioner argued that the evidence presented at trial was legally insufficient to sustain his convictions for premeditated murder and attempted especially aggravated robbery. *Id.* Concluding that the evidence was sufficient to sustain Petitioner's convictions, this court affirmed the judgments of the trial court. *Id.* at *8. Petitioner then sought permission to appeal to the Tennessee Supreme Court, which was denied April 11, 2017.

Thereafter, Petitioner filed a timely pro se petition for post-conviction relief, alleging ineffective assistance of counsel.[1] The post-conviction court appointed counsel to represent Petitioner, and counsel filed an amended petition. The amended petition added claims that trial counsel ("Counsel") was ineffective for failing to make appropriate objections to hearsay, for not properly impeaching false testimony at trial, and for failing to communicate with Petitioner while his case was pending. On April 5, 2024, the post-conviction court conducted a hearing on Petitioner's claims.

B. Post-Conviction Hearing

At the post-conviction hearing, Petitioner testified on his own behalf. He expressed dissatisfaction with Counsel's trial performance, inadequate communication, and trial preparation. Petitioner alleged that Counsel failed to object to "a lot of stuff that went on

---

[1] The petition raised additional claims not before this court on appeal.

in trial." Specifically, Petitioner cited Counsel's failure to object to testimony regarding Petitioner's alleged gang affiliation, testimony from his co-defendant's family member about the planned robbery, and Mr. Metcalf's identification of Petitioner as one of the shooters.

Petitioner said that between his indictment in 2011 and trial in 2016, Counsel met with him four to six times. During one of these meetings, Counsel provided and reviewed discovery materials with him. Petitioner acknowledged that Counsel hired an investigator to assist with the case. He further said that about a month before trial, Counsel discussed the possibility of him testifying. Although Counsel advised against it, Petitioner agreed that he ultimately chose to testify at trial.

Petitioner claimed that the State failed to disclose the nature of "deals" made with trial witnesses in exchange for their testimony. Petitioner admitted that he did not have any evidence to support this claim but stated that "it's on the paperwork." Petitioner additionally alleged that Counsel failed to file a motion for an "evidentiary hearing" that Petitioner wished to pursue. When asked to clarify the type of hearing to which he was referring, Petitioner responded that he "wanted [an] evidentiary hearing about [his] case," but he could not recall any specific details. Finally, Petitioner alleged that Counsel failed to prepare adequately for trial. Petitioner explained he felt this way because each time Petitioner came to court, Petitioner was uninformed as to the proceedings.

Counsel testified that he had been a licensed attorney in Tennessee for over twenty-six years at the time of the hearing and had been practicing criminal law during that entire time. He stated that he was additionally admitted to practice law in Mississippi, as well as several federal district courts, and had tried over 100 trials.

Counsel testified that in preparation for trial, he retained an investigator, reviewed all discovery materials provided by the State—including *Jencks* material—and engaged in plea negotiations with the State. He stated that the State's plea offer began at thirty years and at some point, may have decreased to twenty-five years. Counsel further testified that he was aware of all the State's witnesses in advance and was not surprised by the substance of their testimony. He confirmed that his investigator had the opportunity to investigate all the witnesses.

Counsel stated that the defense theory was that Petitioner did not commit the murder. He expressed his belief that the proof was not particularly strong against Petitioner and the State's case relied primarily of a series of witnesses "who had things to gain." Counsel indicated that this circumstance made it difficult for Petitioner to form realistic expectations about the likely outcome of a jury trial. He stated that although he explained the legal concept of criminal responsibility to Petitioner, Petitioner struggled to accept that

he could be convicted of murder without having fired the shot that killed Ms. Campbell. Counsel testified that, in his view, Petitioner understood criminal responsibility but noted that "[Petitioner has] always maintained that he didn't do the shooting, that he didn't commit the murder. . . . [W]hile he wasn't highly articulate, he made himself understood and was adamant that he did not commit this murder."

Counsel testified that due to Petitioner's difficulty communicating, their conversations were often unproductive. Although Counsel disagreed with Petitioner's claim that they met only four to six times while the case was pending, he acknowledged, "I didn't visit him every month either." When asked if he would have done anything different, Counsel responded,

> I think the only thing I would have done differently is to impress upon [Petitioner] that he would absolutely get convicted and he should absolutely accept [the State's] offer. A lot of times there's clients who are unrealistic. [Petitioner] might have been one of those clients. But I wish I had maybe screamed at him to take [the State's] offer.

## C. Post-Conviction Court's Findings

The post-conviction court made findings of fact and conclusions of law in a written order entered July 26, 2024. Regarding Petitioner's claim that Counsel was ineffective for failing to investigate, the court concluded that the allegation lacked proof of deficient performance or resulting prejudice. The court specifically noted that Petitioner did not call any witnesses at the post-conviction hearing whom he believed should have been presented at trial. Similarly, the court rejected Petitioner's claim that Counsel failed to prepare for trial, again citing a lack of evidence of deficient performance. The court found that Counsel had received open-file discovery and possessed all *Jencks* material. Addressing the claim that Counsel failed to object to unfavorable testimony or impeach false statements, the court concluded the claim was without merit. The court noted that Counsel "did an excellent job in attempting to impeach every State's witness in this trial, as the whole trial rested on [Petitioner's] confessions to many people that he had committed the crime, and the defense was that each of these witnesses had something to gain or was of bad character and should not be trusted." Finally, the court found Petitioner's claim that Counsel failed to adequately communicate or visit him in jail lacked merit, noting there was no proof that additional jail visits would have affected the outcome of the trial.

The court found that "[i]n a reading of this trial record, [Counsel's] cross-examination of the witnesses was quite thorough, and he appeared to this court to have done everything he could professionally to put together the best defense open to the [P]etitioner given the facts of the case." The court noted that, "unfortunately," Petitioner

- 4 -

"had confessed to many persons that he was the shooter," and had "decided to testify at his trial on his own behalf against the advice of [Counsel]." The court found that although Counsel "did his best to put on the only possible defense from the facts of the case," the jury ultimately chose to believe the State's numerous witnesses instead over Petitioner. As such, the court denied Petitioner's petition for post-conviction relief.

Petitioner's timely appeal follows.

## II. Analysis

On appeal, Petitioner asserts that Counsel was ineffective for failing to properly investigate a witness and properly communicate with Petitioner and that cumulative error prejudiced Petitioner. The State responds that Petitioner has waived these claims by filing an inadequate brief and that Petitioner is not otherwise entitled to relief. We agree with the State.

Tennessee Rule of Appellate Procedure 27(a)(7) provides that a brief shall contain an argument setting forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Our court's rules say the same: "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b); *see Bobo v. State*, No. W2016-00477-CCA-R3-PC, 2016 WL 68-3176, at *3 (Tenn. Crim. App. Nov. 16, 2016) (finding waiver where the petitioner's brief contained "no recitation of the testimony at the post-conviction hearing and only conclusory references to that hearing"), *perm. app. denied* (Tenn. Feb. 28, 2017). Furthermore, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 615 (Tenn. 2010).

Here, Petitioner's brief fails to adequately address the issues presented. The argument section contains no citation to the testimony from the post-conviction hearing, offers only conclusory references to that hearing, and lacks any meaningful legal analysis of the authority cited. For example, Petitioner's argument regarding Counsel's alleged failure to communicate is limited to the bare assertion: "Although the evidence against the [Petitioner] was strong, [Petitioner] argues that [Counsel's] lack of communication with the [Petitioner] and the [Petitioner's] apparent lack of understanding concerning the case against him, were tantamount to ineffective assistance of counsel." With respect to Counsel's alleged other deficiencies, Petitioner merely states: "[Petitioner] argues that

- 5 -

[C]ounsel did not adequately prepare for his trial, and that there were several errors," and "[Petitioner] argues that if Counsel had properly investigated the matter, that Counsel would have uncovered problems with identification of the suspect, and that [Petitioner] argues this identification was crucial to his conviction." In addition to his lack of citation to the record or legal authority, Petitioner provides no clarification as to what "matter" is being referenced, nor does he identify which "identification" he challenges. It is not our role to make Petitioner's case for him. *See Sneed*, 301 S.W.3d at 605.

Finally, we note that although the State raised the issue of waiver in its responsive brief, Petitioner did not file a reply brief addressing the inadequacy of his initial brief or the State's claim of waiver. Accordingly, Petitioner has waived review of all claims by failing to adequately brief the issues. *See* Tenn. Ct. Crim. App. R. 10(b).

### III. Conclusion

For the reasons stated above, we affirm the judgment of the post-conviction court.

_____
s/ Matthew J. Wilson
MATTHEW WILSON, JUDGE
